**Thomas FLEEGER, Individually and on behalf of International Chemalloy Corporation, a Canadian Corporation, Plaintiff,**

v.

**The CLARKSON COMPANY LIMITED, a Canadian Corporation, John L. Biddell, David I. Richardson, Jay Richardson, Mashie Development Limited, a Canadian Corporation, and Equitable Mines Limited, a Canadian Corporation, Defendants.**

Civ. A. No. 3–79–0651–H.

United States District Court,
N. D. Texas,
Dallas Division.

March 25, 1980.

Louis J. Weber, Jr., David Elmquist, Jenkens & Gilchrist, Dallas, Tex., Edward T. Joyce, Steven J. Rotunno, William J. Harte, Chicago, Ill., for plaintiff.

Stan McMurry, Rain, Harrell, Emery, Young & Doke, Fletcher L. Yarbrough, Rod Phelan, Carrington, Coleman, Sloman & Blumenthal, Dallas, Tex., for defendants.

## MEMORANDUM OPINION

SANDERS, District Judge.

The case is before the Court on Motion to Dismiss, filed July 31, 1979, by Defendants The Clarkson Company Limited, John L. Biddell, David I. Richardson and Jay Richardson, and a Motion to Dismiss, filed August 9, 1979, by Defendants Mashie Development Limited and Equitable Mines Limited. Plaintiff filed its response to these motions on December 31, 1979; Defendants filed reply briefs on January 18 and January 28, 1980; and counsel presented oral argument to the Court on March 14, 1980.

For the reasons stated herein, this case will be dismissed.

## FACTS

Plaintiff in this shareholder derivative suit sues Defendants for breach of fiduciary duty and fraud. Plaintiff Fleeger is a Texas citizen and a shareholder of International Chemalloy Corporation, a Canadian corporation, ("Chemalloy"). Currently and for approximately the last five years Chemalloy has been in receivership pursuant to an order of Mr. Justice Wright of the Supreme Court of Ontario. Over the objections of the Board of Directors of Chemalloy[1] Mr. Justice Wright appointed Defendant Clarkson, a Canadian corporation in the business of serving as corporate receiver, as the receiver and manager of Chemalloy.[2] Under Canadian law Clarkson as a receiver and manager is an officer of the Supreme Court of Ontario and must frequently obtain leave of court to make management decisions for Chemalloy. Defendants Biddell, D. Richardson, and J. Richardson are Clarkson's representatives, and were placed on Chemalloy's Board of Directors after Clarkson was appointed receiver and manager. During the last four years Clarkson has frequently involved the Supreme Court of Ontario in receivership decisions. That Court has consequently amassed much information (financial statements, appraisals, re-

---

1. The directors appealed Justice Wright's order appointing Clarkson to the Divisional Court, an appellate division of the Supreme Court of Ontario. The appeal was dismissed by the Divisional Court on September 25, 1975. The board did not seek leave to appeal the order of the Divisional Court to the Court of Appeals.

2. The order of the Supreme Court of Ontario appointing Clarkson as receiver and manager of Chemalloy was dated March 18, 1975. At that time Chemalloy was engaged in bankrupt-cy proceedings begun by its creditors. The previous month Clarkson had been appointed interim receiver of Chemalloy in the bankruptcy proceedings by order of the Registrar in Bankruptcy of the Supreme Court of Ontario. The bankruptcy proceedings were stayed by Justice Wright when he appointed Clarkson as receiver and manager (a position with legal duties different from an interim bankruptcy receiver) in the receivership proceedings.

ceiver's reports, etc.) about Chemalloy and is knowledgeable about its affairs.

One of Clarkson's decisions which required the Ontario court's approval was a settlement agreement affecting Chemalloy's rights in some oil and gas leases in Texas.[3] Plaintiff's complaint arises out of the complicated deals leading up to this settlement. Essentially, Plaintiff alleges that the settlement agreement was the product of unfair dealing by the receiver Clarkson and the Chemalloy directors appointed by Clarkson—Defendants Biddell, D. Richardson, and J. Richardson; and that the settlement agreement was the result of substantial conflicts of interest between Clarkson and several of Chemalloy's creditors and debtors, including Defendants Equitable Mines Limited and Mashie Development Limited. Plaintiff says that as a result of fraudulent dealing Chemalloy was deprived of most of its rightful interests in the Texas oil and gas leases.[4]

After hearing the arguments of Chemalloy's board of directors in opposition, Mr. Justice Cory of the Supreme Court of Ontario entered an order approving the settlement agreement on September 19, 1978.

Plaintiff frankly admits he has not made a demand upon Chemalloy's management to bring this action. He says that demand upon the receiver Clarkson would be futile because the complaint attacks the integrity and fairness of Clarkson vis-a-vis Chemalloy. The complaint does not state why demand was not made upon the directors of Chemalloy.

Mr. Justice Wright included in his order appointing Clarkson as receiver and manager the following order, which accords with Canadian law:

3. The leases covered approximately 21,000 acres. Before the settlement agreement the leases on about half of the acres were owned by Chemalloy Oil Corporation (a Texas corporation), a wholly owned subsidiary of Chemalloy. The other half were originally owned by Chemalloy (of Canada), but, through a series of transactions of which Plaintiff complains, eventually ended up in the hands of Defendant Mashie Development, Ltd., which assigned them to Defendant Equitable Mines Ltd.

"[N]o action or other proceeding shall be taken or continued against the respondent International Chemalloy Corporation or the said receiver and manager without leave of this Court first being obtained."

Plaintiff acknowledges he has not obtained leave of the Supreme Court of Ontario to file this case.

## I. DIVERSITY JURISDICTION

■ All Defendants argue that this Court lacks subject matter jurisdiction for lack of diversity. The applicable diversity statute is 28 U.S.C. § 1332(a)(2), giving the federal district courts jurisdiction of suits between "citizens of a State, and foreign states or citizens or subjects thereof." Plaintiff is a citizen of a state (Texas) and the named Defendants are citizens of a foreign state (Canada). If the beneficial plaintiff, Chemalloy, is aligned as a party plaintiff, there is no jurisdiction under § 1332(a)(2) because then citizens of foreign states are on both sides of the suit. *See IIT v. Vencap, Ltd.*, 519 F.2d 1001, 1015 (2nd Cir. 1975). *See also, Tsitsinakis v. Simpson, Spence & Young*, 90 F.Supp. 578, 579 (S.D. N.Y.1950); and *Ex parte Edelstein*, 30 F.2d 636 (2nd Cir. 1929), *cert. denied*, 279 U.S. 851, 49 S.Ct. 347, 73 L.Ed. 994 (1929).

The Court concludes the holding of *Smith v. Sperling*, 354 U.S. 91, 77 S.Ct. 1112, 1 L.Ed.2d 1205 (1956), instructs that Chemalloy should be aligned as a defendant. This result obtains because the complaint alleges an antagonism between Plaintiff and the current management of the corporation, which by court appointment is Clarkson. 354 U.S. at 95–97, 77 S.Ct. at 1114–1115. Clarkson actively advocated court approval

4. The Texas subsidiary, *see* note 3 *supra*, only owned jointly with Equitable and Mashie 2000 acres of leases and 57% of the working interest; it had originally owned exclusively 11,000 acres in leases. Furthermore, Plaintiff says as a result of Clarkson's failure to act Chemalloy lost the opportunity to obtain the rest of the 21,000 acres. (The alleged failure was Clarkson's refusal to foreclose on a defaulted note made by Mashie and secured by the remaining leases.)

of the very settlement agreement which Plaintiff attacks in the complaint. Although the Chemalloy board of directors may have some residual powers, the substantial management of the corporation has been handed over to Clarkson.[5] This realignment of Chemalloy as a defendant cures any lack of diversity. The motion to dismiss is therefore DENIED.

## II. OTHER RULE 12 MOTIONS

Equitable and Mashie have filed several motions which will be disposed of briefly.

■ Pursuant to Rule 12(b)(5) these Defendants move to dismiss for insufficiency of service of process. The Defendants claim Rule 4(c) requires service be made by a U.S. Marshal, a deputy marshal, or a court appointed process server, and they were not so served. Defendants' reliance on Rule 4(c) is misplaced because the rule provides alternative means for service of process for foreign corporations. Rule 4(i)(1)(C). Plaintiff complied with this rule and arranged for personal service on officers of the two Defendant corporations. The motion to dismiss for insufficiency of process is DENIED.

■ Pursuant to Rule 12(b)(2), these Defendants move to dismiss for lack of personal jurisdiction. Defendants have not presented any affidavits in support of this motion and the Court therefore accepts the allegations in Plaintiff's complaint as true. *Black v. Acme Markets, Inc.,* 564 F.2d 681, 683 n. 3 (5th Cir. 1977). Plaintiff's complaint sets forth sufficient contacts of these Defendants with Texas to hold jurisdiction over them without doing violence to traditional notions of fair play and due process. The motion to dismiss for lack of in personam jurisdiction is DENIED.

Finally, these Defendants move to dismiss this action on principles of abstention. Abstention does not apply here. *See Railroad Commission v. Pullman,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). The motion to dismiss based on abstention is DENIED.

## III. COMITY

■ Defendants appropriately ask this Court to dismiss this case without prejudice based upon the international law principle of comity, which was recognized by our Supreme Court in *Hilton v. Guyot,* 159 U.S. 113, 16 S.Ct. 139, 40 L.Ed. 95 (1895). The principle of comity directs deference to a foreign court of competent jurisdiction (in this case, Canada) so long as the laws and public policy of the forum state (Texas) and the rights of the forum's residents are not violated.

Many federal courts have dismissed cases solely on the basis of comity. *See e. g., Cornfeld v. Investors Overseas Services, Ltd.,* 471 F.Supp. 1255 (E.D.N.Y.1979), and cases cited therein at 1262. The rationale for comity dismissals is not based simply on lack of familiarity with the particular foreign law, but rather is in deference to the foreign country's legal, judicial, legislative, and administrative system of handling disputes over which it has jurisdiction, in a spirit of international cooperation. *See id.* at 1262. American courts have consistently deferred to Canadian courts under the principle of comity because Canada is a sister common-law jurisdiction. *See Canada Southern Railroad Co. v. Gebhard,* 109 U.S. 527, 3 S.Ct. 363, 27 L.Ed. 1020 (1883); *Cornfeld v. Investors Overseas Services, Ltd., supra,* at 1259. American courts have relied on the principle of comity to dismiss

---

5. In a reported decision arising from the bankruptcy proceedings against Chemalloy, the court stated:

> This appointment of a receiver and manager over the assets and business of a company does not dissolve or annihilate the company, any more than the taking possession by the mortgagee of the fee of land let to tenants annihilates the mortgagor. Both continue to exist; but it entirely supersedes the company in the conduct of its business, deprives it of all power to enter into contracts in relation dispose of the property put into the possession, or under the control of the receiver and manager. Its powers in these respects are entirely in abeyance.

*Del Zotto v. International Chemalloy Corp.,* 22 Can. Bankruptcy Rep. 268, 269 (Sup.Ct. Ontario 1976), quoting Lord Atkinson in *Moss S.S. Co., Ltd. v. Whinney,* [1912] A.C. 254, 263.

suits involving Canadian corporations involved in ongoing Canadian bankruptcy proceedings. *Clarkson Co. v. Shaheen*, 544 F.2d 624 (2nd Cir. 1976), *Waxman v. Kealoha*, 296 F.Supp. 1190 (D.Haw.1969). Certainly, if this Court cannot extend comity to Canada, the comity principle has little vitality in our jurisprudence. Indeed, the Court is aware of no case in which an American court has refused to defer to Canada.

■ Plaintiff is asking this Court to adjudicate the integrity and wisdom of decisions of the Supreme Court of Ontario and its receiver, Clarkson. Plaintiff's argument that American shareholders will not be treated fairly in Canadian courts is supported by neither facts nor jurisprudence. The Supreme Court of Ontario is obviously more familiar with Canadian law than this Court; it is familiar with the particular facts out of which this suit arises; it approved the settlement relating to the Texas oil and gas leases, which approval Plaintiff challenges in this suit. It would be an unjustified violation of the principle of comity for this Court, by hearing this case on the merits, to create the possibility of entering a judgment in Texas which would effectively abrogate (at least in the U.S.) the judgments and orders of the Supreme Court of Ontario. If, as Plaintiff alleges, Defendants have worked a fraud upon the Supreme Court of Ontario, that court is the appropriate forum to decide that allegation.

Plaintiff argues that two exceptions to comity apply here. First, the public policy of Texas relating to shareholder derivative

suits would be violated if this Court required Plaintiff to take his action to Canada. Second, Canada will not adequately protect the rights of Plaintiff, a Texas citizen. Both of these arguments derive from the procedural limitations Canadian law places on the shareholder derivative plaintiff before he can bring suit.[6]

The Court notes that Canadian law, like Texas and federal law, provides a substantive cause of action known as a shareholder derivative suit.[7] If Plaintiff had no legal remedy under Canadian substantive law, his argument would be stronger. However, even if Canadian law did not supply the substantive cause of action, the Court would still hesitate to take jurisdiction because Plaintiff voluntarily purchased shares in a Canadian corporation which put him on notice that his rights as a shareholder would be construed according to Canadian law. *See Cornfeld v. IOS*, 471 F.Supp. at 1260–61.

Plaintiff argues that Canadian law places some procedural restrictions on a shareholder derivative suit which Plaintiff should not be required to follow, and which are not placed on a shareholder derivative plaintiff under Texas or federal law. The three restrictions which Plaintiff deems onerous (and with which Plaintiff has not complied) are: failure to obtain leave of the Supreme Court of Ontario to sue its receiver (affidavit concerning Canadian Law ¶¶ 24–25); bringing suit against the receiver in a court other than the Supreme Court of Ontario, which appointed the receiver (affidavit con-

---

**6.** The Ontario Business Corporations Act, Ont. Rev.Stat., ch. 53, § 99 (1970) provides:

(2) [A shareholder derivative action] shall not be commenced until the shareholder has obtained an order of the court permitting the shareholder to commence the action.
(3) A shareholder may, upon at least seven days notice to the corporation, apply to the court for an order referred to in subsection 2, and, if the court is satisfied that,
(a) the shareholder was a shareholder of the corporation at the time of the transaction or event giving rise to the cause of action;
(b) the shareholder has made reasonable efforts to cause the corporation to commence or prosecute diligently the cause on its own behalf; and

(c) the shareholder is acting in good faith and it is *prima facie* in the interests of the corporation or its shareholders that the action be commenced,
the court may make the order upon such terms as the court thinks fit, except that the order shall not require the shareholder to give security for costs.

**7.** A court sitting in Ontario would even apply the same standard of care—the "reasonably prudent person in comparable circumstances" standard—in evaluating a breach of duty by a corporate director as would Texas and federal courts. Business Corporations Act, Ont.Rev. Stat., ch. 53, § 144 (1970).

cerning Canadian Law ¶¶ 22–23); and failure to obtain leave of court to bring a derivative suit (Business Corporations Act, Ont.Rev.Stat., ch. 53, § 99(3)(c) (1970)). In addition, Canada would require plaintiff to post a bond which he says might be very high.

The Court is not persuaded that any of these restrictions so restrict Plaintiff's rights that this Court should disregard comity. The test is whether the law of Canada is against "good morals or natural justice . . . or that for some other reason the enforcement of it would be prejudicial to the general interests of our own citizens." *Castilleja v. Camero*, 414 S.W.2d 424, 427 (Tex.1967) (Court enforced Mexican lottery contract even though Texas law strongly denounced lotteries as contrary to public policy). The requirement for leave of court to sue a receiver is not novel. In fact, in the absence of a statute to the contrary, Texas law also requires leave of court to sue a receiver. See part IV *infra*. The desire of Plaintiff to avoid posting a bond to bring his action in Canada is also not compelling.[8] Several American states, including Texas, permit the court to require bonds from derivative shareholder plaintiffs. *See* Tex.Bus.Corp. Act art. 5.14 C. This undercuts Plaintiff's argument that the Canadian bond requirement is a harsh penalty unique to Ontario courts. Plaintiff asserts obtaining leave of court would be futile, but he does not explain why he believes the Canadian courts would treat him any more inhospitably than any other derivative plaintiff. The failure to obtain leave of the Supreme Court of Ontario is a glaring illustration of why this Court should refrain from deciding this case. The Supreme Court of Ontario expressly forbids a suit against Clarkson without obtaining leave of that court. This proceeding defies that order.

In summary, the limitations Canada places on shareholder derivative suits are not abhorrent to a United States court and are not against "good morals or natural justice . . . or prejudicial to the general interests of [U.S.] citizens." Comity compels dismissal; the appropriate forum for this suit is Canada.

## IV. CONFLICTS OF LAWS

Defendants also move to dismiss for failure to state a claim upon which relief can be granted. They argue Plaintiff has failed to comply with the specific requirements of Canadian law for bringing this suit (see *supra*). Alternatively, Defendants contend that even if Canadian law does not apply, this case does not state a claim upon which relief can be granted under Texas law.

■ Conflicts of law principles require this forum to apply the substantive law of another jurisdiction; this forum can apply its own procedural law. The Canadian law with which Plaintiff did not comply is in the category of substance rather than procedure. All three requirements for suit operate as limitations on the right to bring this suit. Under a well-recognized conflicts principle, if the statute that creates a right (in this case, section 99 of the Ontario Business Corporations Act creating the shareholder derivative action) also places limitations upon the exercise of that right, then this Court must also apply those limitations when it enforces the right. *State of California v. Copus*, 158 Tex. 196, 309 S.W.2d 227, 231 (1958). Plaintiff will not be allowed to bring a shareholder derivative action and sue a Canadian receiver and at the same time circumvent the limitations of Canadian law.

■ Several principles direct this Court to apply the law of Canada to this motion to dismiss. First, in a suit against a receiver for breach of fiduciary duty the court must apply the law of the jurisdiction which appointed the receiver. *Restatement Second,*

---

8. The bond is only required of nonresidents of Ontario. The initial bond is $500. Ontario Rules of Practice 374. Under Rule 378 the court may upon defendant's motion increase the amount. It is doubtful that plaintiff would have to post any bond in light of the statute on shareholder derivative suits which expressly forbids the bond requirement. See note 6 *supra*.

Conflicts of Laws, §§ 371, 419. Since the Supreme Court of Ontario appointed Clarkson, this principle points to Ontario law. Second, in a shareholder derivative suit the court must apply the law of the place of incorporation. *Nashua Savings Bank v. Anglo-American Land*, 189 U.S. 221, 230, 23 S.Ct. 517, 518, 47 L.Ed. 782 (1903); *Hausman v. Buckley*, 299 F.2d 696, 700–703 (2nd Cir. 1962) (applying law of Venezuela, place of incorporation). This principle also points to Canadian law because Chemalloy was incorporated in Canada. The rationale for this conflicts principle is found in the rule that a shareholder impliedly contracts to be bound by the law of the state of incorporation. *Groom v. Mortimer Land Co.*, 192 F. 849, 852 (5th Cir. 1912).

■ The Court notes that even if Canadian law were not applied, Texas law would require dismissal, because Clarkson, the receiver, cannot be sued here without leave of the appointing court, Ontario.[9] *Scott v. Roberts*, 230 S.W.2d 322, 324 (Tex.Civ.App. —El Paso 1950, no writ); *see, e. g. San Antonio, U & G Railway Co. v. Vivian*, 180 S.W. 952 (Tex.Civ.App.—San Antonio 1915, no writ); *Andrews v. King*, 170 S.W. 862 (Tex.Civ.App.—San Antonio 1914, no writ).

Whether Canadian or Texas law is applied, Plaintiff's suit should be dismissed.

### V. RES JUDICATA

■ Defendants argue this case is barred by res judicata. Since comity and conflicts principles are dispositive, it is not necessary to reach res judicata. However, the Court notes the apparent validity of the res judicata plea. Plaintiff's complaint refers to the Ontario proceeding in which the order was entered that Defendants say is res judicata of this Texas proceeding. Complaint ¶ 153. On September 19, 1978, Mr. Justice Cory of the Supreme Court of

Ontario, as a part of the Chemalloy receivership proceedings, approved the settlement agreement regarding the Texas oil and gas leases. Affidavit David I. Richardson (July 31, 1979) Exh. D. Plaintiff is attempting to relitigate the fairness of that same agreement when the party for whom he is suing, Chemalloy, was a party to the proceeding before the Supreme Court of Ontario and had an opportunity to raise these same objections to the settlement agreement. Plaintiff's attempted collateral attack in this forum would be barred by res judicata.

In the light of the above discussion, this suit should be, and it is hereby, DISMISSED without prejudice, at Plaintiff's cost.

So ordered.

9. Tex.Rev.Civ.Stat.Ann. art. 2310 says that a Texas receiver may be sued in any court in this state without leave of court. It has been determined that this statute changes the common law only for receivers appointed by Texas state courts, and would not change the common-law rule for foreign receivers like Clarkson. *See Scott v. Roberts*, 230 S.W.2d 322, 324 (Tex.Civ. App.—El Paso 1950, no writ); *Morse v. Tackaberry*, 63 Tex.Civ.App. 487, 134 S.W. 273, 274 (1911, no writ); *cf. St. Louis B & M Ry. Co. v. Knowles*, 180 S.W. 1146, 1147 (Tex.Civ.App.— San Antonio 1915, no writ) (leave of Texas federal court required to sue its receiver in Texas state court).