John PARASCHOS, et al., Plaintiffs

v.

YBM MAGNEX INTERNATIONAL, INC., et al., Defendants

No. 2:98CV6444.

United States District Court, E.D. Pennsylvania.

Dec. 5, 2000.

Russel H. Beatie, Jr., Beatie & Osborne LLP, New York City, for Plaintiffs.

Lawrence Portnoy, Davis, Polk & Wardell, New York City, for Defendants.

### *ORDER*

NEWCOMER, Senior District Judge.

AND NOW, this 5th day of December, 2000, upon consideration of defendants' Consolidated Motion to Dismiss on Grounds of International Comity and Forum Non Conveniens, and all additional briefing related thereto, it is hereby ORDERED as follows:

(1) Defendants' Consolidated Motion to Dismiss (Paper # 158) is GRANTED on grounds of international comity.

(2) This action is DISMISSED as to all defendants.

(3) All outstanding motions are denied as moot, this Court having dismissed the action on grounds of international comity.

## I. BACKGROUND

Plaintiffs bring this consolidated class action on behalf of persons who purchased the common stock of Defendant YBM Magnex International Inc. ("YBM") between January 19, 1996 and May 14, 1998 alleging: (1) violations of Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b–5; (2) violations of Section 20(a) of the Exchange Act; and (3) state law claims of negligent misrepresentation.

Plaintiffs originally named as defendants: (1) YBM; (2) Parente, Randolph, Orlando, Carey & Associates ("Parente"), a firm of certified public accountants; (3) Deloitte & Touche, LLP ("Deloitte"); (4) Jacob G. Bogatin, former President, Chief Executive Officer, and member of the Board of Directors of YBM; (5) Harry W. Antes, former Chairman of the Board of YBM; (6) R. Owen Mitchell, former member of the Board of YBM and Chairman of several Special Committees of the Board; (7) Frank Greenwald, former member of the Board of YBM; (8) David R. Peterson, former member of the Board of YBM and former Premier of the Province of Ontario; (9) Daniel E. Gatti, former Vice President of Finance and Chief Financial Officer of YBM; (10) James J. Held, former Vice President of Business Development and Investor Relations of YBM; and (11) Guy R. Scala, former Vice President of Sales and Marketing of YBM. Eight of the original defendants are from the United States, while three are from Canada.

In sum, plaintiffs allege that defendants engaged in an elaborate fraud over the course of several years, during which time YBM allegedly held itself out as a manufacturer of magnets and a participant in several other businesses, when in fact YBM was a front for the laundering of money obtained by Russian organized crime. Plaintiffs aver that their claims arise from a scheme to launder the proceeds of organized crime activities in Eastern Europe, to convert the criminal revenue to clean money through lawful sales of the common stock of YBM, and to defraud purchasers of YBM's common stock.

On March 28, 2000, this Court entered an Order and an accompanying Opinion that denied numerous motions to dismiss

filed by the original defendants.[1] Included in the March 28, 2000 Opinion was a discussion on international comity, one of two issues before the Court now. This Court agreed with many of the extensive policy reasons supporting dismissal of the plaintiffs' claims, but chose to maintain jurisdiction to allow plaintiffs to seek the protections of United States securities laws. Since the March 28, 2000 Order and Opinion, however, new facts have come to light, the posture of this case has changed, and the Court's opinion as to the nature of this action has shifted accordingly. Among other things, the following events have occurred: (1) seven new Canadian defendants[2] have been joined in the action pursuant to the plaintiffs' Supplemental Complaint; (2) a related bankruptcy appeal has been filed in this Court, after the Receiver and Manager of Defendant YBM in a Canadian Receivership Proceeding involving YBM was granted its petition in the United States Bankruptcy Court for the Eastern District of Pennsylvania to commence a case ancillary to the Canadian Receivership Proceeding pursuant to 11 U.S.C. § 304; and (3) the Court of Queen's Bench of Alberta, Canada has decided to appoint an Independent Litigation Supervisor, with powers independent of the Receiver Ernst & Young, to supervise the defense of actions brought against YBM.

Not only have these events complicated this action procedurally, by raising new issues, claims, and crossclaims, as well as by joining new parties (and their attorneys), these events have introduced further evidence that this action is dominated by multi-national, and in particular, Canadian issues, interests and concerns. Moreover, several of the new defendants filed Motions to Dismiss the Supplemental Complaint, wherein they raised again the issue of dismissal as a matter of international comity (in addition to dismissal based on forum non conveniens). Consequently, this Court determined that the very nature of the international comity and forum non conveniens issues applied to the entire action and to all the parties, and in its Order of October 12, 2000 the Court ordered briefing on those issues. Defendants then filed the instant Consolidated Motion to Dismiss on the Grounds of International Comity and Forum Non Conveniens with said briefing.

## II. DISCUSSION

### A. INTERNATIONAL COMITY

█ As previously outlined in this Court's Order of March 28, 2000, the principle of international comity, also known as the "comity of nations doctrine," permits the "recognition of foreign proceedings to the extent that such proceedings are determined to be orderly, fair and not detrimental to the nation's interests." *Pravin Banker Assocs., Ltd. v. Banco Popular del Peru*, 165 B.R. 379, 384 (S.D.N.Y.1994). The Supreme Court in *Hilton v. Guyot*, 159 U.S. 113, 164, 16 S.Ct. 139, 40 L.Ed. 95 (1895) defined international comity as:

"the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights

---

1. Defendants Parente, Mitchell, Deloitte, Peterson, Held, Scala, Antes, Greenwald, Bogatin, and Gatti all filed motions to dismiss based on numerous grounds, including international comity. Defendant YBM did not file a motion to dismiss because all actions against YBM were stayed and enjoined at that time due to bankruptcy proceedings.

2. The "new" Canadian defendants consist of: (1) National Bank Financial Inc. f/k/a First Marathon Securities Ltd. ("National Bank"), an underwriter of YBM securities, (2) Grif-

fiths McBurney & Partners, an underwriter of YBM securities, (3) Scotia McLeod, Inc., an underwriter of YBM securities, (4) Canaccord Capital Corp., an underwriter of YBM securities, (5) HSBC James Capel Canada Inc. f/k/a/ Gordon Capital Group, an underwriter of YBM securities, (6) Cassels Brock & Blackwell, a Canadian law firm, and (7) Lawrence D. Wilder, a Canadian attorney and partner at Cassels who served as outside legal counsel for YBM.

of its own citizens or of other persons who are under the protection of its laws."

*See also Philadelphia Gear Corp. v. Philadelphia Gear de Mexico, S.A.,* 44 F.3d 187, 191 (3d Cir.1994); *Somportex Ltd. v. Philadelphia Chewing Gum Corp.,* 453 F.2d 435, 440 (3d Cir.1971); *Iwanowa v. Ford Motor Co.,* 67 F.Supp.2d 424, 490 (D.N.J. 1999). The deference given to the executive, legislative, and judicial acts of a foreign nation "fosters international cooperation and encourages reciprocity, thereby promoting predictability and stability through satisfaction of mutual expectations." *Iwanowa,* 67 F.Supp.2d at 490 (quoting *Spatola v. United States,* 925 F.2d 615, 618 (2d Cir.1991)).

▬ Under the principle of comity between sovereign nations, a district court should decline to exercise jurisdiction under certain circumstances in deference to the laws and interests of another foreign country. *See Basic v. Fitzroy Engineering, Ltd.,* 1997 WL 753336, at *8 (7th Cir.1997) (citing *Societe Nationale Industrielle Aerospatiale v. United States District Court for the Southern District of Iowa,* 482 U.S. 522, 543 n. 27, 107 S.Ct. 2542, 96 L.Ed.2d 461 (1987)). Furthermore, "United States courts ordinarily ... defer to proceedings taking place in foreign countries, allowing those ... proceedings to have extraterritorial effect in the United States." *Pravin Banker Assocs.,* 109 F.3d at 854 (citations omitted). The Third Circuit has specifically held that "[c]omity should be withheld only when its acceptance would be contrary or prejudicial to the interest of the nation called upon to give it effect." *Philadelphia Gear Corp.,* 44 F.3d at 191 (quoting *Somportex,* 453 F.2d at 440).

▬ Many federal courts have dismissed cases solely on the basis of comity. *See Fleeger v. Clarkson Co. Limited,* 86 F.R.D. 388, 392 (N.D.Tex.1980) (citing *Cornfeld v. Investors Overseas Services, Ltd.,* 471 F.Supp. 1255 (E.D.N.Y.1979), and pointing to cases cited therein at 1262).

The rationale for dismissals based on comity is not based simply on a lack of familiarity with the particular foreign law, but rather is in deference to the foreign country's legal, judicial, legislative, and administrative system of handling disputes over which it has jurisdiction, in a spirit of international cooperation. *Id.* (citing *Cornfeld,* 471 F.Supp. at 1262). However, comity is not extended to foreign proceedings when doing so would be contrary to the public policy of the U.S. *Pravin,* 109 F.3d at 854.

The deciding factor for this Court in maintaining jurisdiction of this action in its March 28, 2000 Opinion was plaintiffs' choice of law. That is, the Court chose to allow plaintiffs to maintain their action here because plaintiffs chose to bring their claims under the Exchange Act and have their claims adjudicated in a United States District Court. However, it now appears to this Court that the overwhelming evidence of Canada's interests in this action dictates that the Court defer to the Canadian legal system and dismiss the action on grounds of international comity.

### 1. CANADIAN INTERESTS

▬ As defendants state in their Motion, it is now apparent that this is a securities fraud action pertaining to Canadian registered securities, brought by a purported class of investors who are virtually all Canadian, against predominantly Canadian defendants, concerning a Canadian corporation whose stock was sold only on Canadian stock exchanges. Furthermore, in addition to this consolidated civil action, the related ancillary bankruptcy proceeding, and a federal grand jury investigation taking place in the United States, eleven proceedings are currently pending in Canada relating to the same alleged securities fraud dispute: one brought by the Ontario Securities Commission ("OSC"), a Canadian provincial government agency; two involving YBM's Canadian court-appointed receiver; six by defendants against either the OSC or the

Crown (actions that cannot be heard in the United States); and two class actions mirroring the same securities fraud alleged in this case by virtually the same proposed class of plaintiffs.[3]

In discussing the Canadian interests of this case, the Court first notes it is undisputed that YBM was incorporated in Canada under Canadian law, with its registered office in Alberta, Canada. Furthermore, according to YBM's own 1997 Prospectus ("YBM Prospectus"), YBM desired "to ensure that despite the fact that YBM carries on a substantial portion of its activities in Eastern Europe, its internal controls and financial reporting standards will be in accordance with those otherwise generally applicable to Canadian public companies." Prospective YBM investors were also clearly informed by the YBM Prospectus that "[t]he securities offered hereby have not been registered under the United States Securities Act of 1933, as amended (the 'U.S. Securities Act') or the securities laws of any state." Consequently, YBM's stock was never traded on a United States stock exchange or listed on NASDAQ. Issuance and trading of YBM securities were regulated only under Canadian law and only by Canadian governmental entities.

With respect to the nationality of the plaintiffs and defendants, the Court concludes that the majority of parties are Canadian. As to the plaintiffs, defendants have submitted evidence that indicates the vast majority of YBM's outstanding shares were held by Canadian investors, and that the vast majority of any prospective class would be comprised of Canadian plaintiffs. According to an exhibit entitled "YBM MAGNEX INTERNATIONAL, INC.

SUMMARY OF SHAREHOLDER CLAIMS" (from a September 1, 2000 affidavit of Larence Portnoy, Esq .), as of July 26, 2000, of the claims received and not disallowed by the receiver, 98.8% of the claims, by dollar amount, were made on behalf of residents of Canada. Only 0.6% were made on behalf of residents of the United States. Plaintiffs counter defendants' evidence by submitting a Supplemental Factual Submission that asserts, *inter alia:* (1) YBM actively solicited investors in the United States; (2) several U.S. mutual funds and investment firms owned substantial blocks of YBM stock during the proposed class period; (3) according to records of The Depository Trust Co. in New York, YBM stock was held by a number of individual American shareholders other than mutual funds (namely U.S. securities broker-dealers and firms); and (4) at least eight million YBM shares were held under the street name of the American depository company CEDE & Co.

Despite the number of shares allegedly owned by American shareholders, and regardless of the actual numbers, it is clear to this Court that the action is brought predominately by Canadian plaintiffs. More importantly, however, and as discussed below, any and all investors of YBM securities (that is, potential plaintiffs) were aware that the company's registered office was in Canada, that the company was not registered on any U.S. stock exchanges, and that Canada would have significant interests in the company and in any potential legal action concerning YBM.

---

**3.** Canada's interests are also made apparent in the various motions still pending before this Court. Without adjudicating or reaching the merits of the related bankruptcy appeal filed by the YBM Receiver, the Court notes that the Receiver argues that comity dictates that this Court defer to the Queen's Bench proceeding and reinstate the 11 U.S.C. § 304 stay originally placed by that Court. Again, without adjudicating or reaching the merits of the motions to dismiss filed by various defen-

dants, the Court notes that those defendants argue that this Court lacks subject matter jurisdiction over them, suggesting that Canada would be the only appropriate jurisdiction to adjudicate claims as to those defendants. The Court points these facts out to indicate that the Canadian interests have surfaced at virtually every stage of this action, and that these interests have turned out to be not only relevant, but prevalent as well.

With respect to the defendants, the majority of defendants (10 of 18) are also Canadian. The named defendants now consist of one Canadian corporation, two Canadian former YBM directors, five Canadian underwriters, one Canadian law firm, one Canadian attorney, two United States accounting firms, and six United States YBM directors and officers.

In light of the foregoing facts describing the nature of this action and pointing to the eleven other related proceedings pending in Canada, the predominance of Canadian interests is readily apparent.

## 2. PREJUDICE TO INTERESTS OF THE UNITED STATES

It is the Court's opinion that dismissal of the instant action would not be contrary or prejudicial to the interests or public policy of the United States. The record is absent of, and plaintiffs fail to demonstrate, sufficient evidence to indicate otherwise.

The Court previously gave deference to plaintiffs' choice of forum and law, because in general the United States has an interest in protecting the rights of its citizens and its investors. In this case however, YBM's investors knew that they might not be under the protections of United States securities laws. As already noted above, the YBM Prospectus indicated to investors that the YBM securities "have not been registered under the United States Securities Act of 1933," and that "despite the fact that YBM carries on a substantial portion of its activities in Eastern Europe, its internal controls and financial reporting standards will be in accordance with those otherwise generally applicable to Canadian public companies." The Court determines that, by virtue of the YBM Prospectus and the fact that the YBM securities were traded solely on Canadian stock exchanges, the application of United States securities laws were not contemplated by YBM or its investors. Therefore, dismissal of the instant case in deference to Cana-

da's legal system and depriving plaintiffs an opportunity to litigate their securities fraud claims under United States securities laws is not prejudicial or contrary to the nation's interests—the United States does not have an insurmountable interest in regulating Canadian corporations and investors who choose to purchase securities that are clearly regulated by Canadian law or in applying U.S. law when its application was not contemplated.

Furthermore, the Court concludes that any relief afforded to plaintiffs under Canadian law by the Canadian courts would be adequate, albeit it may differ from any specific relief afforded by this Court. Canadian law clearly provides causes of action for securities fraud, and in light of Canada's interests over the case it would make more sense to have such law adjudicate this matter.

## 3. CONCLUSION

In light of the foregoing reasons, the Court finds that Canada's interests in this action have become abundantly clear and that the action is now so overwhelmingly dominated by Canadian interests it should be dismissed in deference to Canadian law and the Canadian courts on the basis of international comity. The Court concludes that Canada has a greater interest than the United States in the subject matter of this case, that dismissal of the instant action would not be contrary or prejudicial to the interest of the United States, and that this action would be duplicative of the many related proceedings pending before Canadian courts. Accordingly, defendants' Consolidated Motion to Dismiss is granted on grounds of international comity and the action is dismissed in deference to the Canadian courts.[4]

AND IT IS SO ORDERED.

---

**4.** The Court declines to address the merits of

defendants' arguments concerning the doc-

trine of forum non conveniens, having dismissed the case on grounds of international comity.