**Opinion issued July 31, 2014.**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-13-00636-CV

————————————

**KUMKANG VALVE MANUFACTURING CO. LTD., Appellant**

**V.**

**ENTERPRISE PRODUCTS OPERATING LLC AND
ENTERPRISE GAS PROCESSING LLC, Appellee**

---

**On Appeal from the 165th District Court
Harris County, Texas
Trial Court Case No. 2007-77260**

---

## OPINION

After a thousand industrial valves in two of its facilities failed, Enterprise

Products Operating LLC and Enterprise Gas Processing, LLC (collectively

Enterprise), sued Kumkang, the valve manufacturer, for breach of warranty. A

Korean company, Kumkang appeared and answered in the suit, but later filed for bankruptcy relief in Korea and sought recognition of the foreign proceeding in a United States bankruptcy court, under Chapter 15 of the federal Bankruptcy Code. The United States Bankruptcy court entered a preliminary order of recognition, and the trial court below stayed this state court suit pending resolution of the federal proceedings. But that stay was lifted after the federal bankruptcy court dismissed Kumkang's Chapter 15 proceeding for want of prosecution.

The parties stipulated to liability and damages on Enterprise's breach of warranty claims. Kumkang then moved for summary judgment, claiming that the Korean bankruptcy judgment discharged Enterprise's state court claims. Enterprise filed a cross-motion, claiming that Kumkang's affirmative defense of discharge in bankruptcy failed as a matter of law. The trial court granted summary judgment to Enterprise.

Kumkang appeals, contending that the trial court erred in refusing to recognize that the Korean bankruptcy judgment discharged Enterprise's claims against it and in failing to give effect to the federal bankruptcy court's recognition order in the dismissed Chapter 15 proceeding. Because the federal bankruptcy proceedings were dismissed for want of prosecution, we conclude that the federal bankruptcy court never finally determined the effect of the Korean court's

judgment on Enterprise's claims, and thus Enterprise's state law claims against Kumkang were never discharged. We therefore affirm.

**Background**

Enterprise purchased approximately 1000 of Kumkang's high-pressure valves for use in constructing two of its gas-processing facilities, one in Colorado and one in Wyoming. The valves failed. Ultimately, Enterprise replaced them at an out-of-pocket cost of approximately $11 million.

In 2007, Enterprise sued Kumkang for, among other claims, breach of warranty. It sought reimbursement for its out-of-pocket cost and damages to compensate for its lost profits. In February 2009, before the suit was resolved, Kumkang filed for protection under the Korean Debtor Rehabilitation and Bankruptcy Act in Korean bankruptcy court. The Korean bankruptcy court ordered Inspection Commissioner Samil PricewaterhouseCoopers to investigate the circumstances that led to Kumkang's bankruptcy and render an opinion concerning whether the requested relief would be appropriate.

In April 2009, Kumkang petitioned a federal bankruptcy court in the Southern District of Texas for recognition of a foreign main proceeding under Chapter 15 of the United States Bankruptcy Code. 11 U.S.C. §§ 1501–1532. Kumkang served Enterprise with its petition, which included information about the

Korean bankruptcy proceeding, as well as notice of the recognition hearing scheduled in the Chapter 15 proceeding.

The federal bankruptcy court entered an order recognizing the pendency of the Korean proceeding, which gave rise to the automatic stay of all litigation against Kumkang in the United States. Kumkang filed a suggestion of bankruptcy in this case, and the trial court abated the proceedings.

Enterprise did not appear in the Korean bankruptcy proceeding. The list of creditors that Kumkang filed in the Korean bankruptcy proceeding did not include Enterprise. The Korean Inspection Commissioner's report mentioned Enterprise's claims against Kumkang, but Kumkang's Korean rehabilitation plan did not address them.

The Korean bankruptcy court approved Kumkang's rehabilitation plan in December 2009. Kumkang did not inform the federal bankruptcy court or its American bankruptcy counsel of this development. After nearly two years passed without word from Kumkang, the federal bankruptcy court sent notice of its intent to dismiss the Chapter 15 proceeding and scheduled a status conference. At the conference, Kumkang's American counsel informed the bankruptcy court that he had tried, without success, to communicate with his client and that he had no information about the status of the Korean proceeding. The United States bankruptcy court gave Kumkang's American counsel another month to provide an

4

update, but received no response. The United States bankruptcy court thereafter entered an order dismissing the Chapter 15 case and lifted the stay.

Enterprise moved the trial court below to lift the bankruptcy stay, and the trial court granted the motion. The parties eventually entered into an agreement, pursuant to Texas Rule of Civil Procedure 11, in which Kumkang "[a]gree[d] that Enterprise is damaged in the amount of $11,000,000 due to problems with the valves[,]" and that the valves did not comply with Kumkang's express warranties and were unfit for Enterprise's particular purpose.

Next, Kumkang moved for summary judgment on the affirmative defense of discharge in bankruptcy. With its motion, Kumkang provided copies of the Korean bankruptcy statute, the court records underlying the Korean bankruptcy proceeding, the Korean bankruptcy judgment approving Kumkang's reorganization, and certified translations of those documents.

Enterprise responded that the Korean proceeding had not discharged its claims against Kumkang because (1) Enterprise was not subject to the Korean bankruptcy court's jurisdiction and did not participate in the proceeding, (2) Kumkang failed to identify Enterprise's claim against it to the Korean bankruptcy court, and (3) Kumkang waived its opportunity to raise bankruptcy discharge as an affirmative defense by failing to fully comply with Chapter 15 in the United States bankruptcy court. Enterprise also filed a cross-motion for

5

summary judgment, contending that Kumkang failed to raise a fact issue on its affirmative defense of discharge in bankruptcy and that Enterprise was entitled to liability and damages findings in its favor as a matter of law based on the parties' Rule 11 agreement. The trial court denied Kumkang's motion and granted summary judgment in favor of Enterprise.

## Discussion

### I.    *Summary Judgment Standard of Review*

We review a traditional summary judgment to determine whether the record establishes there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law on a ground set forth in the motion. TEX. R. CIV. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex. 1985). In deciding whether the summary judgment record establishes the absence of a genuine issue of material fact, we view as true all evidence favorable to the non-movant and indulge every reasonable inference, and resolve all doubts, in its favor. *Nixon*, 690 S.W.2d at 548–49.

Discharge in bankruptcy is an affirmative defense. TEX. R. CIV. P. 94; *Strata Resources v. State*, 264 S.W.3d 832, 843 (Tex. App.—Austin 2008, no pet.); *Burnam v. Patterson*, 119 S.W.3d 12, 14 (Tex. App.—Amarillo 2003, pet. denied). A defendant moving for traditional summary judgment must conclusively establish

each element of an affirmative defense. *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997).

When both sides move for summary judgment and the trial court grants one motion and denies the other, we review both sides' summary judgment evidence and determine all questions presented. *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000); *Jones v. Strauss*, 745 S.W.2d 898, 900 (Tex. 1988). In reviewing cross-motions for summary judgment, we may render the judgment that the trial court should have rendered. *FM Props. Operating Co.*, 22 S.W.3d at 872; *Williamson v. State Farm Lloyds*, 76 S.W.3d 64, 67 (Tex. App.—Houston [14th Dist.] 2002, no pet.).

## II.     *Foreign country bankruptcy judgment as proof of discharge*

Kumkang first contends that the trial court erred in refusing to recognize that Enterprise's claims were discharged in the Korean rehabilitation proceeding. Kumkang, however, has not cited to any case in which a party has sought and obtained summary judgment based on the direct recognition of a foreign country bankruptcy judgment without regard to American law.

Kumkang cites to two cases to suggest that our inquiry involves application of Korean law and principles of comity to determine whether the Korean bankruptcy judgment is valid: *Mindis Metals, Inc. v. Oilfield Motor & Control, Inc.*, 132 S.W.3d 477 (Tex. App.—Houston [14th Dist.] 2004, pet. denied), and

*Fleeger v. Clarkson Co., Ltd.*, 86 F.R.D. 388 (N.D. Tex. 1980). We find guidance in neither. *Mindis Metals* involved a judgment issued by a court in the state of Georgia that Mindis sought to enforce pursuant to the Uniform Enforcement of Foreign Judgments Act (UEFJA). *See* 132 S.W.3d at 483 (citing TEX. CIV. PRAC. & REM. CODE ANN. § 35.001–.008.). The UEFJA, however, does not provide a mechanism for obtaining enforcement of judgments from other countries. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 35.001 (defining "foreign judgment" as "a judgment, decree, or order of a court of the United States or of any other court that is entitled to full faith and credit in this state."). Chapter 36 of the Civil Practice and Remedies Code, which provides a mechanism for obtaining enforcement of foreign country judgments, by its terms, does not extend to foreign bankruptcy judgments. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 36.001(2) (defining "foreign country judgment" as "a judgment of a foreign country granting or denying a sum of money other than a judgment for taxes, a fine, or other penalty; or support in a matrimonial or family matter"). Our sister court in *Mindis* ultimately determined that the Georgia judgment was entitled to full faith and credit and ordered its reinstatement pursuant to the UEFJA. 132 S.W.3d at 490.

In *Fleeger*, the federal district court granted the motion to dismiss a shareholder derivative suit against a Canadian corporation in receivership pursuant to an order of the Supreme Court of Ontario. *See* 86 F.R.D. at 393. "American

8

courts have consistently deferred to Canadian courts under the comity principle." *Caddel v. Clairton Corp.*, 105 B.R. 366, 366 (N.D. Tex. 1989); *see also Fleeger*, 86 F.R.D. at 393 (observing that it was "aware of no case in which an American court has refused to defer to Canada."). The plaintiff shareholder's complaint arose out of dealings that culminated in a settlement agreement approved by the Ontario court. *Fleeger*, 86 F.R.D. at 393. Under the Canadian legal system, the plaintiff would be required to obtain leave from the Ontario court before he could bring the shareholder derivative claim. *Id.* at 394. The district court concluded that comity compelled dismissal of the suit, explaining that "the appropriate forum for this suit is Canada." *Id.*

Even within the United States and its territories, bankruptcy law is itself foreign to state courts. Congress has exercised its constitutional grant of authority over bankruptcy matters by vesting jurisdiction over them exclusively in the federal courts. 28 U.S.C. § 1334(a) (giving federal district courts "original and exclusive jurisdiction of all cases under title 11"); *see* U.S. CONST. art. I, § 8 (requiring Congress "[t]o establish . . . uniform Laws on the subject of Bankruptcies throughout the United States"); *Kalb v. Feuerstein*, 308 U.S. 433, 438–39, 60 S. Ct. 343 (1940). "'Congress intended to grant comprehensive jurisdiction to the bankruptcy courts so that they might deal efficiently and expeditiously with all matters connected with the bankruptcy estate.'" *Celotex*

*Corp. v. Edwards*, 514 U.S. 300, 308, 115 S. Ct. 1493, 1499 (1995) (quoting

*Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir.1984)).

Thus, we reject Kumkang's request that we directly recognize the scope and effect of a foreign bankruptcy proceeding without regard to federal bankruptcy law. The historical deference that state courts owe to the federal judicial system in bankruptcy matters instead requires us to determine whether federal bankruptcy law authorized the trial court to accept the Korean bankruptcy judgment as direct evidence of discharge, even absent a federal bankruptcy court order discharging Enterprise's claims. We conclude that it does not. We begin by examining the relevant bankruptcy law, codified in Chapter 15 of the United States Bankruptcy Code.

Entitled "Ancillary and Other Cross-Border Cases," Chapter 15 of the Bankruptcy Code, enacted in 2005, essentially adopts the Model Law on Cross–Border Insolvency, which the United Nations Commission on International Trade Law ("UNCITRAL") had developed in 1997 "to provide effective mechanisms for dealing with cases of cross-border insolvency." 11 U.S.C. § 1501(a); *see also* H.R. REP. No. 109–31, pt. 1, at 105 (2005), *reprinted in* 2005 U.S.C.C.A.N. 88, 169. Chapter 15 identifies five objectives: (1) to encourage cooperation with "the courts and other competent authorities of foreign countries involved in cross-border cases;" (2) to increase "legal certainty for trade and investment;" (3) to promote the

"fair and efficient administration of cross-border insolvencies" in order to "protect[] the interests of all creditors, and other interested entities, including the debtor;" (4) to protect and maximize "the value of the debtor's assets;" and (5) to facilitate "the rescue of financially troubled businesses." 11 U.S.C. § 1501(a); *see also* H.R. REP. No. 109–31, pt. 1, at 105. *See generally* Leif M. Clark & Karen Goldstein, *Sacred Cows: How to Care for Secured Creditors' Rights in Cross-Border Bankruptcies*, TEX. INT'L L.J. 513, 514–15, 527 (2011) [hereinafter *Sacred Cows*]. Comity—"the 'recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens, or of other persons who are under the protections of its laws'"—is central to Chapter 15. *In re Vitro, S.A.B. de C.V.*, 701 F.3d 1031, 1043–44 (5th Cir. 2012) (quoting *Hilton v. Guyot*, 159 U.S. 113, 164, 16 S. Ct. 139, 143 (1895)).

Chapter 15 authorizes a foreign representative to petition for recognition of a foreign proceeding in United States bankruptcy court. 11 U.S.C. §§ 1504, 1509(a), 1515. If the petition meets the statutory requirements, the bankruptcy court must enter an order granting recognition of the foreign proceeding. If the foreign proceeding "is pending in the country where the debtor has the center of its main interests," it is recognized as a "foreign main proceeding." 11 U.S.C. § 1517(b)(1); *see also id.* § 1502(4).

11

With the entry of an order recognizing a foreign main proceeding, the foreign representative of the proceeding automatically receives relief, including the automatic stay created by section 362, with respect to the debtor and its property in the United States. *Id.* §§ 1520(a), 1509(b)(1), 1524. Chapter 15 authorizes the federal court to assist the debtor throughout the course of the bankruptcy proceedings by giving its foreign representative the ability to operate the debtor's business within the United States under section 363 and the right to sue, be sued, and "intervene in any proceedings in a State or Federal court in the United States in which the debtor is a party." *See id.* § 1521 (empowering bankruptcy court to grant appropriate relief after recognition of foreign proceeding); *Id.* § 1507 (empowering bankruptcy court, if recognition is granted, to provide additional assistance, including "just treatment of all holders of claims against or interests in the debtor's property"); *see also In re Vitro*, 701 F.3d at 1051–69 (considering, under sections 1521 and 1507, reasonableness of bankruptcy court's denial of debtor's request for permanent injunction enjoining United States creditors from continuing suits against it).

The Bankruptcy Code categorizes a Chapter 15 proceeding as a "core proceeding." 11 U.S.C. § 1157b(2)(P); *see generally In re Wood*, 825 F.2d 90, 97 (5th Cir. 1987) (defining "core proceeding" as one that "involves a right created by the federal bankruptcy law," or "one that would arise only in bankruptcy," such as

"the filing of a proof of claim or an objection to the discharge of a particular debt"). The federal bankruptcy courts retain exclusive subject-matter jurisdiction over core proceedings. *See* 28 U.S.C. §§ 157(b), 1334(b); *Koval v. Henry Kirkland Contractors, Inc.*, No. 01-06-00067-CV, 2008 WL 458295 (Tex. App.—Houston [1st Dist.] Feb. 15, 2008, no pet.) (citing *Sigmar v. Anderson*, 212 S.W.3d 789, 794 (Tex. App.—Austin 2006, no pet.)); *America's Favorite Chicken Co. v. Samaras*, 929 SW 2d 617, 630 (Tex. App.—San Antonio 1996, writ denied) ("The allowance and disallowance of a bankruptcy claim is considered a core proceeding under federal bankruptcy law, and the bankruptcy court retains exclusive jurisdiction over such claims."). Chapter 15 is "the exclusive door to ancillary assistance to foreign proceedings, thus concentrating control of these questions in one court." *In re Vitro*, 701 F.3d at 1043.

Because the Bankruptcy Code exclusively vests in the federal bankruptcy courts the authority to determine whether to grant comity to the bankruptcy proceedings of foreign courts, we hold that the trial court correctly refused to apply Korean law and comity and to directly recognize the Korean bankruptcy discharge. We next determine whether the federal bankruptcy proceedings in this case resulted in a federal recognition of a Korean discharge of Enterprise's claims.

### III. *Federal bankruptcy court recognition order as proof of discharge*

Kumkang procured an order from the federal bankruptcy court recognizing the Korean bankruptcy proceeding as a foreign main proceeding. It did not, however, pursue any specific relief from the federal bankruptcy court in connection with Enterprise's claims against it. By granting summary judgment in favor of Enterprise, the trial court necessarily concluded that it could not rely on the federal bankruptcy court's recognition order as proof that Enterprise's claims against Kumkang were discharged in the Korean bankruptcy. Kumkang contends that the trial court erred in so concluding because the federal bankruptcy court's May 2009 recognition order is enough to support its discharge defense. We disagree.

Recognition of a proceeding under Chapter 15 is merely a precondition for obtaining substantive relief from the United States bankruptcy court, such as the recognition and enforcement of specific orders or decrees previously granted in a foreign bankruptcy proceeding. *In re Vitro*, 701 F.3d at 1042. Chapter 15's provisions "do not prevent modification or termination of recognition if it is shown that the grounds for granting it were fully or partially lacking or have ceased to exist." 11 U.S.C. § 1517(d); *see also id.* § 1522(a) (providing that relief may be granted pursuant to section 1521 only if the interests of creditors and other interested entities are "sufficiently protected"); *In re Vitro*, 701 F.3d at 1069

(upholding bankruptcy court's refusal to accord comity to permanent injunction issued in Mexican bankruptcy proceeding that would have non-consensually discharged claims of non-debtor guarantors). The bankruptcy court here, therefore, could have refined its recognition decision at any step in the proceeding, including—or perhaps especially—when the foreign debtor asked for enforcement relief, including discharge, against United States creditors. *See Sacred Cows*, 46 TEX. INT'L L.J. at 527 (noting that, unlike predecessor statute, Chapter 15 "divorc[es] the issue of recognition from the issue of relief sought upon recognition[,]" so that gaining access to United States bankruptcy court is fairly routine, while judicial discretion "plays a much larger role in the nature and scope of assistance afforded").

An interim Chapter 15 recognition order that a foreign bankruptcy is a main proceeding is not, standing alone, evidence that the eventual judgment resulting from the foreign bankruptcy proceeding discharged a creditor's claims. The summary-judgment evidence presented by Kumkang contains no substantive ruling from the federal bankruptcy court addressing the question of discharge of Enterprise's claims against Kumkang by the Korean judgment. Kumkang did not provide the federal bankruptcy court with the Korean judgment when it was finalized, and it did not ask the court for relief from Enterprise's claims before the Chapter 15 proceeding was dismissed for want of prosecution. Absent a ruling

15

from the federal bankruptcy court encompassing the discharge question presented here, we hold that the trial court correctly granted summary judgment in favor of Enterprise.

## Conclusion

We affirm the judgment of the trial court.

Jane Bland
Justice

Panel consists of Justices Keyes, Bland, and Brown.