

# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

No. 04-11-00443-CV
No. 04-11-00649-CV

Pamela **SCHEEL** and Gary M. Poenisch,
Appellants

v.

Brian **ALFARO** and Primera Energy Partners, L.L.C.,
Appellees

From the 285th Judicial District Court, Bexar County, Texas
Trial Court Nos. 2007-CI-11604 & 2007-CI-11604
Barbara Hanson Nellermoe, Judge Presiding

Opinion by:     Sandee Bryan Marion, Justice

Sitting:         Karen Angelini, Justice
                 Sandee Bryan Marion, Justice
                 Rebeca C. Martinez, Justice

Delivered and Filed:   May 15, 2013

AFFIRMED IN PART; REVERSED IN PART

In these consolidated appeals, Pamela Scheel challenges the trial court's order setting aside a courthouse-steps sale conducted by a receiver pursuant to two turnover orders and the trial court's setting aside of those turnover orders. Gary Poenisch, who was Scheel's trial counsel, appeals from a sanctions order entered against him. We reverse a portion of the sanctions against Poenisch, but affirm in all other respects.

## BACKGROUND

In an underlying lawsuit, Pamela Scheel sued Brian Alfaro, Johnny Day, and Primera Energy Partners, L.L.C. ("PEP"). On July 15, 2010, a final judgment was rendered in favor of Scheel awarding her actual damages in the amount of $1,688.67, plus attorney's fees, costs, and interest for a total of $34,553.67. Alfaro and PEP (collectively, "appellees") timely filed a motion for new trial on August 16, 2010.

On September 10, 2010, while the new trial motion was still pending and the parties were in settlement negotiations, Scheel sought and obtained two identical *ex parte* turnover orders, one as to Alfaro and the other as to PEP. In both orders, the trial court appointed Jesse White as receiver with authority to take possession of and sell the non-exempt property that was the subject of each order. On September 16, 2010, Scheel's attorney, Gary Poenisch, sent a letter to Elizabeth McLaughlin, appellees' trial counsel, that discussed three separate lawsuits: the "Selva case," the "Martinez case," and the "Scheel case." The two-page, single-spaced letter begins with a paragraph regarding the Selva case and references a designation of the record and an enclosed copy of a June 25, 2010 order, discusses other matters, and ends with asking whether Alfaro would consider a settlement. The next paragraph regards the Martinez case and references two other enclosed orders. The third paragraph regards the Scheel case and begins with the sentence: "With respect to Ms. Scheel's case against Alfaro and [PEP], a final judgment exists." The paragraph then references an enclosed request for production of documents; states Poenisch has reviewed defendants' motion for new trial and explains why he believes it lacks merit; discusses the costs of an appeal should Alfaro decide to appeal; encourages appellees to pay the judgment; states, *"With respect to [Alfaro and PEP], orders were signed on September 2010 enforcing the judgment by turnover."*; and ends with a request that if appellees desire to settle, payment of the entire judgment amount should be made to Poenisch and Scheel and

delivered to his office. [Emphasis added.] This single sentence is the only notice provided to appellees that the two *ex parte* turnover orders had been obtained and signed. Copies of the turnover orders were not provided. McLaughlin acknowledged she received and read the letter on September 16. She said she did not take any action on the two turnover orders, she did not ask Poenisch for copies of the orders, and she did not seek to obtain copies of the orders from the court because she believed she and Poenisch "were engaged in a good faith effort to negotiate a settlement agreement on this matter [the Scheel case]. . . . [And she] responded to his settlement offer with a counter offer."

On September 21, 2010, again while the motion for new trial was pending and the parties were in settlement negotiations, the court-appointed receiver, Jesse White, conducted a courthouse-steps sale without notice to appellees or their counsel. The sale yielded a total of $4,020.00, $2,010.00 for each defendant. Scheel was the purchaser. In consideration for the $4,020.00, White conveyed to Scheel virtually all of appellees' assets. On September 28, 2010, the trial court granted appellees' motion for new trial.

At some point in January 2011, the parties settled the underlying suit. An order signed by the trial court on February 3, 2011, states as follows:

> On the 13th day of January, 2011, came on for hearing the Motion for Clarification filed by [Scheel], . . . [T]he parties entered stipulations on the record that provided that the Order Granting Motion for New Trial and Motion for Remittitur, signed on September 28, 2010 and corrected by *nunc pro tunc* on December 1, 2010, is vacated, and the Final Judgment signed on July 15, 2010 is a final subsisting judgment; the Plaintiff [Scheel] will remit the sum of $16,250.00, the Court is of the opinion that the parties are in agreement and that the following order should be entered . . . .

On January 25, 2011, Poenisch filed a Satisfaction of Judgment, which stated the July 15, 2010, judgment "is paid in full, and the Defendants and sole judgment debtors, [Alfaro and PEP], are hereby released and discharged from" the final judgment.

On April 1, 2011, Poenisch filed a motion to approve the receiver's report. On April 14, 2011, Poenisch sent two letters, one to appellees' counsel and one to Alfaro, notifying them of the motion and, for the first time, that a receiver's sale had been conducted on September 21, 2010, and a bill of sale had been conveyed to Scheel "conveying, among other things, all of [Alfaro's] interest in any corporation, limited liability company, partnership, or trust, as well as all automobiles, bank accounts, mineral interests, and other personal property more particularly described in the attached Bill of Sale." The letter to appellees' counsel terminated their services as attorneys for PEP and as attorneys for six other entities that were not parties to the underlying suit. The letter to Alfaro terminated his services as officer, manager, broker, agent, and employee of PEP and of six other entities that were not parties to the underlying suit. Alfaro was instructed to relinquish the keys to his offices and vehicles and he was informed his "continued presence on the Property [was] strictly prohibited."

On April 14, 2011, appellees took action, and filed an application for a temporary restraining order and temporary injunction, which was granted. The TRO was extended to May 9, 2011. On May 6 and 11, 2011, appellees filed objections to the approval of the receiver's report and motions to set aside the receiver's sale, remove the receiver, and for sanctions alleging the turnover and receiver's sale all occurred without their knowledge, while the motion for new trial was pending, and in the midst of settlement negotiations. Following a May 12, 2011 hearing, Judge Nellermoe signed a June 23, 2011 order denying confirmation of the receiver's report, vacating and setting aside the receiver's sale, removing the receiver, and issuing monetary sanctions against Poenisch. Both Scheel and Poenisch appeal from that order in cause number 04-11-00443-CV. On June 24, 2011, appellees moved to set aside the turnover orders arguing the orders were void due to the subsequent settlement and release of judgment and because the trial court did not have authority to enter turnover orders that divested property while a timely-

filed motion for new trial was pending. The motion was granted, and Judge Stryker signed the order on August 5, 2011. Scheel appeals from this order in cause number 04-11-00649-CV.

## RECEIVER'S SALE

On appeal, Scheel raises two challenges to the trial court's order setting aside the receiver's sale: (1) the trial court did not have jurisdiction to set aside the sale, and (2) if the trial court had jurisdiction, the court erred because there is no evidence of fraud or material irregularities in the sale. Scheel does not challenge the trial court's removal of the receiver.

### A.    Jurisdiction

Scheel first asserts the trial court lacked jurisdiction to set aside the receiver's sale because appellees did not timely file their motion to set aside the sale. According to Scheel, the trial court's plenary power over the September 10, 2010 turnover orders expired thirty days after the orders were signed, and appellees did not file their motion until May 11, 2011, well after the trial court's plenary power had expired on Monday October 11, 2010.[1]

Appellees, on the other hand, distinguish between the trial court's plenary power over the turnover orders and the trial court's plenary power over the receiver's sale. Appellees contend the trial court had continuing jurisdiction over the receiver's sale and, therefore, it had jurisdiction to set aside the sale. We agree with appellees. The sale of property by a receiver is generally not effective until the sale is reported by the receiver and confirmed by the court, after

---

[1] Scheel relies on an opinion from this court in *Sherwood v. Kelly* for her argument that appellees could seek to set aside the receiver's sale only by filing a motion in the trial court while the court still had plenary power or by filing a bill of review. Her reliance on *Sherwood* is misplaced because the facts in that case are clearly distinguishable from the facts in this appeal. In *Sherwood*, the receiver's sale was the result of a partition order and appellant was a party to the partition proceeding. The receiver's sale had been confirmed and the property conveyed to the purchaser, when appellant brought a separate action in trespass to try title. 257 S.W. 278, 279 (Tex. Civ. App.—San Antonio 1923, writ dism'd w.o.j.). For these reasons, the appellate court held that although there may have been irregularities in the sale, as alleged by appellant who was a party to those proceedings, any irregularities could only be timely called into question by an appeal from the trial court's ruling upon proper motion made and filed in that cause (and not in an independent action in trespass to try title to the land), or by a bill of review to set the sale aside in the same proceeding (and not in an independent suit to recover the lands). *Id.*

notice to the parties. *Salaymeh v. Plaza Centro, LLC*, 258 S.W.3d 236, 240 (Tex. App.—Houston [1st Dist.] 2008, no pet.). A court of equity has jurisdiction to set aside a receiver's sale, either before or after confirmation. *See Russell v. S. & M. Amusement Co.*, 198 S.W.2d 944, 945 (Tex. Civ. App.—Waco 1946, writ ref'd n.r.e.). Because the receiver's sale had not yet been confirmed when appellees filed their motion to set aside the sale, we conclude the trial court had jurisdiction to consider appellees' motion.

**B.      Did the Trial Court Err by Setting Aside the Sale?**

In their motion, appellees asked the trial court to set aside the receiver's sale based on "gross irregularities of the sale." Specifically, appellees complained they were not given notice of the sale, the receiver did not post adequate notice as required under the statute, the receiver purported to sell interests in property that are statutorily prohibited, the receiver did not fulfill his duties under the statute, and the receiver sold the property for a grossly inadequate price. On appeal, Scheel argues there is no evidence of fraud or material irregularities in the sale.

Confirmation of a receiver's sale is a matter for the trial court's discretion depending on the particular facts of each case, and we will reverse this decision only upon a showing that the trial court has abused its discretion. *See Salaymeh*, 258 S.W.3d at 240. A receiver's sale should not be set aside based on the sales price being inadequate unless there is a showing of fraud or material irregularities, or a showing that the inadequacy of the price received is so great as to shock the conscience of the court. *Id.*

The turnover statute allows a trial court to "appoint a receiver with the authority to take possession of the nonexempt property, sell it, and pay the proceeds to the judgment creditor to the extent required to satisfy the judgment." TEX. CIV. PRAC. & REM. CODE ANN. § 31.002(b)(3) (West 2008). Here, both turnover orders appointed a receiver "with the authority to take immediate possession of the non-exempt property" of appellees and ordered that the property be

sold by the receiver with proceeds, less the cost of sale, to be applied toward satisfaction of the judgment.

We acknowledge the turnover statute does not expressly require notice and a hearing before turnover orders may be granted. *Id.* § 31.002; *Main Place Custom Homes, Inc. v. Honaker*, 192 S.W.3d 604, 628 (Tex. App.—Fort Worth 2006, pet. denied); *Sivley v. Sivley*, 972 S.W.2d 850, 861 (Tex. App.—Tyler 1998, no pet.); *see also Ex parte Johnson*, 654 S.W.2d 415, 418 n.1 (Tex. 1983) (orig. proceeding) (acknowledging final judgment rendered against judgment-debtor "put him on notice that post-judgment collection proceedings would follow."). However, "[i]n the absence of a controlling statute, the court may direct what notice of a sale by a receiver shall be given and compliance with its order is sufficient, but failure to give notice or insufficiency of the notice given will ordinarily render the sale invalid." *Gibson v. Smith*, 511 S.W.2d 327, 328 (Tex. Civ. App.—Tyler 1974, no writ).

In this case, neither turnover order contains any language regarding notice of the sale to appellees. But, at the *ex parte* hearing, the trial court expressed concern that nothing in the proposed orders provided appellees with an opportunity to satisfy the judgment in lieu of the sale. Poenisch assured the trial court he would give appellees notice that the turnover orders had been entered within twenty-one days. He did so in the September 16 letter. Poenisch obtained the two turnover orders on September 10 and he mailed the letter to McLaughlin on September 16. He did not give notice of the receiver's sale that occurred on September 21, 2010, only eleven days after obtaining the orders. According to McLaughlin, she first knew about the sale when Poenisch served the motion to approve the receiver's report on April 1, 2011—by which time appellees had no ability to satisfy the judgment before the sale and despite the motion for new trial having already been granted and the Satisfaction of Judgment filed.

Also, the turnover orders each contain a long list of several categories of property the receiver was allowed to take possession of, including, but not limited to, all outdoor equipment, home furnishings, farming and ranching vehicles and implements, boats, motor vehicles, golf carts, motorcycles, all fine art and collectibles, photographic and electronic equipment, telescopes, cameras, printers, all contents of any safe deposit boxes, bearer bonds, construction equipment and office equipment, and gross revenues from all income sources. All of these assets sold for a total of $4,020.00 to satisfy a judgment in the total amount of $34,553.67, plus costs and post-judgment interest. At the hearing on the motion to set aside the sale, Alfaro testified about his interest in the various companies listed in the turnover orders, and that his interest was in the millions of dollars. The court, in its discretion, may have determined that $4,020.00 for all the assets listed in the turnover orders was a grossly inadequate price.

The trial court could have considered the inadequate sale price; Poenisch providing notice in the form of a single sentence buried in a two-page, single-spaced letter that discussed not only the Scheel lawsuit, but two other lawsuits as well; and the fact that Poenisch did not provide notice of the sale before it occurred and entered into a settlement with appellees after the sale, and decided that the circumstances warranted setting aside the receiver's sale. On this record, we cannot conclude the trial court acted outside its discretion in doing so.

**TURNOVER ORDERS**

In their motion to set aside the turnover orders, appellees argued the orders were void due to the subsequent settlement and release of judgment and because the trial court did not have authority to enter turnover orders that divested property while a timely-filed motion for new trial was pending. Without stating its reasons, the trial court determined the turnover orders to be void and granted the motion. On appeal, Scheel asserts the trial court erred because the turnover orders became final thirty days after they were signed; therefore, the trial court lacked plenary

power to set them aside. Appellees, on the other hand, assert that when the July 2010 judgment was vacated and/or released in January 2011, the trial court had no choice but to set aside the turnover orders. We agree with appellees.

The validity of a turnover order requires that the underlying debt judgment be final. *Baca v. Hoover, Bax & Shearer*, 823 S.W.2d 734, 738 (Tex. App.—Houston [14th Dist.] 1992, writ denied). For purposes of collecting on a judgment, a "final judgment" in the underlying suit does not mean simply that the judgment is one from which an appeal may be taken. *Scheuing v. Challis*, 104 S.W.2d 581, 582 (Tex. Civ. App.—San Antonio 1937, writ ref'd). It means that the underlying litigation has reached the point in the judicial process that the judgment may no longer be set aside by the trial court or reversed on appeal. *Id.*; *Baca*, 823 S.W.2d at 738. Here, the turnover orders rest on the July 15, 2010 judgment. Appellees' motion for new trial was filed on August 16, 2010 and was still pending when the *ex parte* turnover orders were signed on September 10, 2010. Although we do not dispute appellants' argument that there is no requirement that a plaintiff wait any period of time before seeking a turnover order, we also acknowledge "at any stage of the proceedings . . . [a judgment-debtor] should have the right to show either that the judgment relied upon by the plaintiff to support his [turnover] does not, in fact, exist, or that it is void." *Tom Benson Chevrolet Co. v. Beall*, 567 S.W.2d 857, 859 (Tex. App.—San Antonio 1978, writ ref'd n.r.e.). In other words, there may be circumstances where an otherwise valid turnover order loses its validity because the underlying judgment is set aside either by the trial court or appellate court. *See Enis v. Smith*, 883 S.W.2d 662, 663 (Tex. 1994) (orig. proceeding) (holding trial court abused its discretion in continuing to enforce turnover order after rendering court vacated underlying judgment). That is the case here. When the trial court granted the motion for new trial, the July 15, 2010 judgment could no longer support the turnover orders, which in turn, became a nullity. *Baca*, 823 S.W.2d at 738-39.

Further, a turnover order is nothing more than a vehicle for the collection of the judgment; once the judgment is paid, "the turnover order los[es] its teeth and [is] of no further force and effect." *Pandozy v. Beaty*, 254 S.W.3d 613, 617 (Tex. App.—Texarkana 2008, no pet.). Also, when "a judgment creditor accepts money in complete satisfaction and release of his judgment, that judgment has no further force or authority." *Rapp v. Mandell & Wright, P.C.*, 123 S.W.3d 431, 434 (Tex. App.—Houston [14th Dist.] 2003, pet. denied); *Reames v. Logue*, 712 S.W.2d 802, 805 (Tex. App.—Dallas 1986, writ ref'd n.r.e.) (stating that judgment was extinguished for all purposes after judgment creditor accepted money in "full and complete satisfaction and release" of the judgment). "A release of judgment is an express relinquishment by the judgment creditor of [her] rights in the judgment; it operates as a bar because the one who might otherwise have asserted the right has expressly surrendered it." *Rapp*, 123 S.W.3d at 434. "The estoppel principles underlying the acceptance-of-benefits doctrine come into play where the party's words, conduct, or silence are inconsistent with the right [she] seeks to assert, though [she] may not have expressly surrendered the right." *Id.*

Here, Scheel filed a Satisfaction of Judgment in which she stated the July 15, 2010 judgment had been paid in full and appellees were released and discharged from that judgment. Because Scheel accepted money in complete satisfaction of her judgment, we conclude the judgment had no further force or authority and the turnover orders "lost their teeth." *Pandozy*, 254 S.W.3d at 617; *Rapp*, 123 S.W.3d at 434; *Reames*, 712 S.W.2d at 805; *Baca*, 823 S.W.2d at 738.

For these reasons, we conclude the trial court did not err by setting aside the turnover orders.

**SANCTIONS**

The trial court sanctioned Poenisch for filing groundless or bad faith pleadings under Texas Rule of Civil Procedure 13, for filing groundless pleadings under Civil Practice and Remedies Code section 9.011, and for failing to serve copies of pleadings, pleas, motions, and applications on opposing counsel as required under Texas Rule of Civil Procedure 21. The trial court found that Poenisch filed and/or signed the following:

> (1) the application for turnover, which was held *ex parte* in violation of Rule 680 and Local Rule 6;
>
> (2) the turnover order, which ordered appellees to turn over their interests in various L.L.C.s, which is prohibited by statute;
>
> (3) the January 25, 2011 Satisfaction of Judgment "because at the time Mr. Poenisch was aware that a Receiver's sale had taken place but failed to notify [appellees] about said sale or any alleged credit";
>
> (4) letters to appellees and their attorneys on or about April 14, 2011 informing them of the turnover order and subsequent receiver's sale "even though [Poenisch] knew that the sale had never been approved by the Court, that [appellees] had never received notice of the purported sale and that the judgment had already been satisfied"; and
>
> (5) the motion to approve the receiver's report filed on March 30, 2011, "even though Mr. Poenisch was aware that the sale was held without notice, purported to convey L.L.C. interests which were prohibited by statute and that the judgment had already been satisfied."

On appeal, Poenisch raises four complaints about the sanctions order: (1) the trial court lacked jurisdiction to impose the sanctions, (2) the requirements to impose sanctions were not satisfied, (3) the sanctions order does not adequately explain or specify the reasons for the sanctions, and (4) the order improperly sanctions him for conduct outside the scope of permissible sanctions. We review a trial court's award of sanctions for an abuse of discretion. *Herring v. Welborn*, 27 S.W.3d 132, 143 (Tex. App.—San Antonio 2000, pet. denied). A trial court abuses its discretion in imposing sanctions if the order is based on an erroneous view of the law or a clearly erroneous assessment of the evidence. *Monroe v. Grider*, 884 S.W.2d 811, 816

(Tex. App.—Dallas 1994, writ denied). We review the entire record that was before the trial court, and we view the conflicting evidence in the light most favorable to the trial court's ruling and will draw all reasonable inferences in favor of the trial court's judgment. *Herring*, 27 S.W.3d at 143.

## A.       Jurisdiction

Poenisch argues that sanctioning him for any conduct related to obtaining the turnover orders expired at the same time the trial court lost plenary power over those orders. Appellees distinguish between the trial court's plenary power over the turnover orders and its plenary power over the receiver's sale. They contend the trial court had the power to sanction Poenisch because their request for sanctions concerned post-turnover-order conduct and, more specifically, conduct pertaining to the receiver's sale over which the trial court had continuing jurisdiction.

A sanctions order is not like a judgment. *Kenseth v. Dallas County*, 126 S.W.3d 584, 600 (Tex. App.—Dallas 2004, pet. denied). A trial court has no power to assess sanctions after its plenary power has expired. *Scott & White Mem'l Hosp. v. Schexnider*, 940 S.W.2d 594, 596 (Tex. 1996) (per curiam) (holding trial court cannot not levy Rule 13 sanctions pertaining to matters occurring before judgment after its plenary power expires); *Jobe v. Lapidus*, 874 S.W.2d 764, 767 (Tex. App.—Dallas 1994, writ denied) (holding Rule 13 sanction motion does not survive loss of trial court's plenary jurisdiction). Instead, a sanctions order must be tied to the portion of the proceedings in which the sanctionable conduct occurred. *Kenseth*, 126 S.W.3d at 600; *see also Arndt v. Farris*, 633 S.W.2d 497, 499 (Tex. 1982) (orig. proceeding) (trial court may impose sanctions for post-judgment discovery abuse under Rule 621a). We conclude the third, fourth, and fifth grounds on which the trial court based the sanctions are tied to the sale. Therefore, because the trial court still had plenary power over the receiver's sale when appellees filed their motion for sanctions, the trial court had jurisdiction to consider appellees' motion with

regard to these three grounds. We next address the sufficiency of the sanctions order as to those grounds.

**B. Sufficiency of Sanctions Order**

Poenisch contends the sanctions order does not adequately explain the reasons for the sanctions. The trial court sanctioned Poenisch under Civil Practice and Remedies Code section 9.012, and Rules of Civil Procedure 13 and 21b. Only Rule 13 contains a particularity requirement: prohibiting sanctions "except for good cause, the particulars of which must be stated in the sanction order." TEX. R. CIV. P. 13. Here, the trial court's order satisfied Rule 13's particularity requirement because it contained the five separate findings listed above.

Poenisch next asserts appellees made no effort, despite his presence in the courtroom, to call him to testify to establish their burden of showing he acted in bad faith or for the purpose of harassment. We disagree with the premise of Poenisch's argument, which is that evidence of intent must be based only upon his testimony regarding his actions.

The purpose of Rule 13 is to check abuses in the pleading process. *See Emmons v. Purser*, 973 S.W.2d 696, 700 (Tex. App.—Austin 1998, no pet.). Under this rule, the trial court imposes sanctions against an attorney, a party, or both who filed a pleading that is either (1) groundless and brought in bad faith or (2) groundless and brought for purposes of harassment. *Id.* Rule 13 states that an attorney's signature constitutes a certificate that the attorney has read the pleading, motion, or other paper; and that to the best of the attorney's knowledge, information, and belief formed after reasonable inquiry the instrument is not groundless and brought in bad faith or groundless and brought for the purpose of harassment. TEX. R. CIV. P. 13. Intent for purposes of Rule 13 may be proven by circumstantial evidence as well as direct evidence. *Schnexnider v. Scott & White Mem'l Hosp.*, 953 S.W.2d 439, 441 (Tex. App.—Austin 1997, no writ). Because the fifth ground on which the trial court based its sanctions order relates

to the filing of a pleading, we narrow our examination of the record to determine if it contains evidence, either circumstantial or direct, from which the trial court could have determined Poenisch signed and/or filed a pleading in bad faith.

Judgment against appellees was entered on July 15, 2010 and a motion for new trial was pending on August 16, 2010. While the new trial motion was still pending, Poenisch requested *ex parte* turnover orders against appellees. The orders were signed on September 10, 2010 and notice of a receiver's sale was posted at the courthouse on that same date. On September 16, 2010, Poenisch sent his letter, containing the single sentence referring to the turnover orders but not the receiver's sale, to McLaughlin. Five days later, on September 21, 2010, the receiver conducted the sale. In January 2011, unaware of the receiver's sale and despite Scheel purportedly already owning all of appellees' assets pursuant to the receiver's sale, appellees settled and paid Scheel the judgment in full in the amount of $18,318.67. Poenisch filed a Satisfaction of Judgment stating the July 15, 2010 judgment had been paid in full. Nearly two months after the parties settled, after appellees paid the judgment, and after Poenisch filed the Satisfaction of Judgment, Poenisch filed a motion to approve the receiver's report on March 30, 2011.

McLaughlin testified she did not receive notice of the hearing on the *ex parte* applications for a turnover order, she did not receive a copy of the turnover orders, and she was not given notice of the receiver's sale. She acknowledged she received the September 16, 2010 letter from Poenisch in which he stated turnover orders had been obtained, but, after reviewing his settlement offer contained in the same letter, she responded with a counter-offer. She testified that while arguing her motion for new trial[2] and leading up to the January 2011 settlement,

_____

[2] The motion for new trial was signed on September 28, 2010, corrected by *nunc pro tunc* on December 1, 2010, and vacated, after the Satisfaction of Judgment was filed, by signed order on January 31, 2011.

Poenisch never told her that a receiver's sale had occurred. McLaughlin said she took no action on the turnover orders because "at that time [she] believed that [she and Poenisch], as officers of the Court, were engaged in a good faith effort to negotiate a settlement on this matter." McLaughlin stated that, "[i]n all negotiations about possible settlement, about a remittitur on the trial, after the Motion for New Trial was granted, [neither turnover order] was [ever] mentioned by Mr. Poenisch again until the Motion to Approve the Receiver's Report was set in April of 2011." She said they negotiated a satisfaction of judgment and a release of the abstract of judgment lien in January 2011. When asked whether Poenisch made any affirmative misrepresentations, McLaughlin testified as follows:

> I believe he did. Because at the time when we were in this courtroom and we entered into settlement negotiations regarding the remittitur of the trial judgment, his omission, failure to state that he already owned all of [Alfaro's] property, is . . . an affirmative act that shows he was not engaging in fair and equitable settlement negotiations.
>
> Had we received a copy of the turnover order, and the receiver's sale, the settlement negotiations at the time of the motion on the remittitur would have been entirely different, and Mr. Poenisch knows that.

The record also indicates Poenisch sought the sale of Alfaro's interest in numerous entities (the L.L.C.s) that were not parties to the underlying lawsuit. There is no dispute that Poenisch asked for a turnover order as to these interests, but he did not do so via a charging order. *See* TEX. BUS. ORGS. CODE ANN. § 153.256(d) (West 2012) ("The entry of a charging order is the exclusive remedy by which a judgment creditor of a partner or of any other owner of a partnership interest may satisfy a judgment out of the judgment debtor's partnership interest.").

We conclude, on this record, that the trial court did not abuse its discretion in sanctioning Poenisch in the amount of $8,500.00 under Rule 13. Therefore, we need not determine whether these sanctions were appropriate under Civil Practice and Remedies Code section 9.011.

The trial court also sanctioned Poenisch "$5,000.00 for failure to serve documents on opposing counsel, as required by TRCP 21." Texas Rule of Civil Procedure 21 provides as follows: "Every pleading, plea, motion or application to the court for an order, whether in the form of a motion, plea or other form of request, unless presented during a hearing or trial, shall be filed with the clerk of the court in writing, shall state the grounds therefor, shall set forth the relief or order sought, and at the same time a true copy shall be served on all other parties, and shall be noted on the docket." TEX. R. CIV. P. 21. However, Civil Practice and Remedies Code section 31.002 ("Collection of Judgment Through Court Proceeding") does not require notice of a turnover application or prohibit turnover orders from being granted absent notice. *See Sivley*, 972 S.W.2d at 861. Therefore, the trial court erred in sanctioning Poenisch $5,000.00 under Rule 21.

## CONCLUSION

We reverse that portion of the trial court's order sanctioning Poenisch in the amount of $5,000.00 and affirm the trial court's orders in all other respects.

Sandee Bryan Marion, Justice