**Opinion issued October 16, 2025**



In The

# Court of Appeals

For The

# First District of Texas

———————————

**NO. 01-23-00924-CV**

———————————

**IRONOAK, INC., MICHAEL SYDOW, AND CHIDI ANUNOBI, Appellants**

**V.**

**MICHAEL EUGENE PORTER, JOHN T. PRESTON, CRISTEN DAVID FELDMAN, JEFFREY S. BAKER, GEOFFREY ALAN BERG, GABRIEL BERG, AND KATHRYN E. NELSON, Appellees**

---

**On Appeal from the 215th District Court**
**Harris County, Texas**
**Trial Court Case No. 2022-80846**

---

# O P I N I O N

This appeal arises from the trial court's imposition of sanctions on IronOak, Inc. f/k/a Iron Oak LLC ("Iron Oak"), and its attorneys, Michael Sydow and Chidi Anunobi (collectively, "appellants"). Sydow and Anunobi represented Iron Oak in a suit based on a settlement agreement that purportedly, wrongfully assigned claims

previously assigned to Iron Oak. Yet Iron Oak was not a party to the settlement, and the settlement agreement did not include the claims Iron Oak alleged had been improperly transferred.

Iron Oak brought suit against the parties to the settlement agreement who were affiliated with Continuum Energy Technologies, LLC, ("CET")—John Preston and Michael Porter (CET's principals); Geoffrey Berg, Gabriel Berg, and Kathryn Nelson (Preston, Porter, and CET's attorneys); John Hannan (CET's receiver); and Cristen Feldman and Jeffrey Baker (Hannan's attorneys), but not CET itself. Iron Oak alleged violations of the Texas Uniform Fraudulent Transfer Act ("TUFTA"), conversion, and conspiracy, and shortly after, moved for a temporary restraining order based on the same. Preston, Porter, Geoffrey Berg, Gabriel Berg, and Nelson (collectively, "appellees") responded by moving to dismiss under Rule 91a and moving for sanctions. After the appellants nonsuited their claims, the trial court granted the appellees' motion for sanctions.

In three issues by Iron Oak and five issues each by Sydow and Anunobi, the appellants contend that the trial court erred in imposing sanctions.

We modify the trial court's judgment and affirm as modified.

## Background

Iron Oak and its principal, Rajiv Gosain, have a long history of litigation against CET, Preston, and Porter that spans across multiple jurisdictions, including three countries.

Iron Oak, the appellees, and CET mediated one of their prior disputes, and all parties—except Iron Oak—entered into a settlement agreement. In the settlement agreement, Hannan (as appointed receiver for CET) assigned CET's claims against Iron Oak, Gosain, and two of Gosain's companies (CETech and Visualize Holdings) to Preston, Porter, and CET. Hannan also assigned them "all claims asserted or those that could be or could have been asserted by the Receiver against any party . . . in the Massachusetts Suit."

Iron Oak immediately moved to void the settlement agreement, and the court denied that motion.

Iron Oak, through its attorneys Sydow and Anunobi, then filed this suit—but not against CET. Instead, Iron Oak sued CET's principals (Porter and Preston), the attorneys who represented them (Geoffrey Berg, Gabriel Berg, and Nelson), Hannan, CET's former receiver, and Hannan's attorneys (Feldman and Baker). Iron Oak claimed violations of TUFTA, conversion, and civil conspiracy based on allegations that the settlement agreement wrongfully assigned claims previously assigned to Iron Oak. The settlement agreement attached to their pleading and on which they

3

relied was mostly redacted. But the unredacted portion (1) named the parties to the settlement agreement, which did not include Iron Oak; and (2) listed the claims Hannan, as the receiver, had assigned to CET, which did not include the claims forming the basis of Iron Oak's suit.

A few weeks later, Iron Oak applied for a temporary restraining order (TRO) in the trial court seeking to restrain the appellees from proceeding in a Massachusetts suit, where a hearing on Porter and CET's motion for summary judgment was set for the following week. Iron Oak did not provide notice to the appellees of the first hearing on its TRO application.

Shortly after, the appellees moved to dismiss this suit under Rule 91a and for sanctions. In their motion for sanctions, they requested the trial court impose sanctions based on Rule 13 of the Texas Rules of Civil Procedure, Chapter 10 of the Texas Civil Practice and Remedies Code, and the court's inherent authority.

Iron Oak, through Anunobi, filed a motion for nonsuit, which the trial court granted.

The appellees supported their request for sanctions with, among other things, the following:

- the unredacted settlement agreement and proof of Sydow's and Anunobi's receipt of the same;
- evidence of Sydow and Iron Oak's failure to comply with discovery in other cases;

4

- relevant pleadings in this and other cases;
- declarations of Iron Oak's principal, emails between the parties and their attorneys; and
- evidence of attorney's fees.

After the hearing, Anunobi moved for leave to file additional evidence consisting of his supplemental affidavit with attachments, including unredacted email correspondence attached as Exhibit 19. The trial court allowed the appellees to incorporate such evidence in their post-hearing briefing. One day later, Anunobi amended his motion for leave with the same affidavit and a redacted version of Exhibit 19, but the trial court denied his amended motion.

The trial court granted the appellees' motion for sanctions and imposed the following sanctions:

(1) $44,720 sanction to compensate the appellees for their attorney's fees and expenses plus conditional appellate fees, assessed jointly and severally;

(2) $250,000 penalty against Sydow and Iron Oak, payable to the trial court;

(3) $25,000 penalty against Anunobi, payable to the trial court; and

(4) compulsory completion of ten additional CLE hours for the next five years.

The trial court also entered findings of fact and conclusions of law addressing the existence of good cause for the sanctions under Rule 13 and Chapter 10.

**Sanctions Award**

Iron Oak, Sydow, and Anunobi contend that the trial court abused its discretion in awarding sanctions against them. We disagree.

*Standard of Review*

When a sanctions order refers to a specific provision, either by citing it, tracking its language, or both, we are confined to determining whether the sanctions are appropriate under that provision. *Metzger v. Sebek*, 892 S.W.2d 20, 51 (Tex. App.—Houston [1st Dist.] 1994, writ denied). Although the appellees included the court's inherent authority as a basis for sanctions in their motion, the judgment invoked only Texas Rule of Civil Procedure 13 and Texas Civil Practice and Remedies Code Chapter 10. We will thus confine our review to whether the trial court properly sanctioned Iron Oak, Sydow, and Anunobi under these authorities.

We review the sanctions imposed pursuant to both provisions under the abuse-of-discretion standard. *Nath v. Tex. Child.'s Hosp.*, 446 S.W.3d 355, 361 (Tex. 2014). "Although we view conflicting evidence favorably to the court's decision, we are not bound by a trial court's fact findings or conclusions of law and must, instead, review the entire record independently to determine whether the trial court abused its discretion." *Brewer v. Lennox Hearth Prods., LLC*, 601 S.W.3d 704, 717 (Tex. 2020). "[We] may reverse the trial court's ruling only if the trial court acted without reference to any guiding rules and principles, such that its ruling was

6

arbitrary or unreasonable." *Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007). The degree of discretion we afford the trial court is greater when sanctions are imposed for groundless pleadings than when imposed for discovery abuse. *Falk & Mayfield L.L.P. v. Molzan,* 974 S.W.2d 821, 827 (Tex. App.—Houston [14th Dist.] 1998, pet. denied).

"A sanctions award that fails to comply with due process constitutes an abuse of discretion because a trial court has no discretion in determining what the law is or applying the law to the facts." *Nath*, 446 S.W.3d at 361. But a trial court does not abuse its discretion when imposing sanctions if some evidence supports its decision. *Id.* We defer to the trial court's determination of credibility. *Powell v. Grimes*, No. 01-23-00129-CV, 2025 WL 626428, at *9 (Tex. App.—Houston [1st Dist.] Feb. 27, 2025, no pet.).

Generally, courts presume pleadings, motions, and other papers are filed in good faith. *Nath*, 446 S.W.3d at 361. "The party seeking sanctions bears the burden of overcoming this presumption of good faith." *Id.*

### *Sanctions under Texas Civil Practice and Remedies Code Chapter 10 and Texas Rule of Civil Procedure Rule 13*

Chapter 10 prohibits attorneys from signing and filing pleadings or motions with an improper purpose or that lack legal or factual support. *Pressley v. Casar*, 567 S.W.3d 327, 332 (Tex. 2019). Chapter 10 authorizes sanctions if (1) any claim in the pleading is frivolous, or (2) a pleading was made for an improper purpose.

7

TEX. CIV. PRAC. & REM. CODE § 10.001; *Westergren v. Jennings*, 441 S.W.3d 670, 678 (Tex. App.—Houston [1st Dist.] 2014, no pet.).

Chapter 10 provides:

The signing of a pleading or motion as required by the Texas Rules of Civil Procedure constitutes a certificate by the signatory that to the signatory's best knowledge, information, and belief, formed after reasonable inquiry:

> (1) the pleading or motion is not being presented for any improper purpose, including to harass or to cause unnecessary delay or needless increase in the cost of litigation;
>
> (2) each claim, defense, or other legal contention in the pleading or motion is warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law; [and]
>
> (3) each allegation or other factual contention in the pleading or motion has evidentiary support or, for a specifically identified allegation or factual contention, is likely to have evidentiary support after a reasonable opportunity for further investigation or discovery . . . .

TEX. CIV. PRAC. & REM. CODE § 10.001. "A court that determines that a person has signed a pleading or motion in violation of Section 10.001 may impose a sanction on the person, a party represented by the person, or both." *Id.* § 10.004(a). But a court may not sanction a represented party under Chapter 10 based on unsupported legal contentions. *Id.* § 10.004(d).

Rule 13 provides:

8

The signatures of attorneys or parties constitute a certificate by them that they have read the pleading, motion, or other paper; that to the best of their knowledge, information, and belief formed after reasonable inquiry the instrument is not groundless and brought in bad faith or groundless and brought for the purpose of harassment . . . .

If a pleading, motion or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, after notice and hearing, shall impose an appropriate sanction available under Rule 215-2b, upon the person who signed it, a represented party, or both. Courts shall presume that pleadings, motions, and other papers are filed in good faith. No sanctions under this rule may be imposed except for good cause, the particulars of which must be stated in the sanction order. "Groundless" for purposes of this rule means no basis in law or fact and not warranted by good faith argument for the extension, modification, or reversal of existing law.

TEX. R. CIV. P. 13. Thus, Rule 13 authorizes sanctions against attorneys and represented parties who file a groundless pleading in bad faith or for the purpose of harassment. *Id.*

### 1. *The appellants' groundless pleadings*

"Groundless" means "no basis in law or fact and not warranted by good faith argument for the extension, modification, or reversal of existing law." *Id.* To determine whether a pleading is groundless, a trial court must examine the facts available to the party and the circumstances existing when the party filed it. *WWW.URBAN.INC. v. Drummond*, 508 S.W.3d 657, 674 (Tex. App.—Houston [1st Dist.] 2016, no pet.).

The pleadings at issue here—the original petition and TRO application—are based on the settlement agreement in a prior action.

9

The trial court found that none of the exhibits attached to the pleadings supported Iron Oak's allegations and even the unredacted portion of the redacted settlement agreement plainly contradicted Iron Oak's allegations. The unredacted portion established that Iron Oak was not a party to the settlement agreement and that the receiver assigned claims held by CET, or that could have been asserted by the receiver, to Porter, Preston, and CET. Thus, Iron Oak has no arguable cause of action based on the settlement agreement. The record supports the trial court's conclusion that the appellants' allegations had no basis in fact.

The trial court also concluded, even if all the facts alleged by Iron Oak were true, the appellants' allegations had no basis in law because:

(1) As to the claims against Hannan in his capacity as receiver for CET in the prior suit, the original petition was an impermissible collateral attack on the former receiver's assignment in a new proceeding,[1] and as the former receiver, Hannan had absolute immunity for actions performed within the scope of the receivership;[2]

---

[1] *See Sun Tec Comput., Inc. v. Recovar Grp., LLC*, No. 05-14-00257-CV, 2015 WL 5099191, at *3 (Tex. App.—Dallas Aug. 31, 2015, no pet.) (mem. op.).

[2] *See Davis v. West*, 317 S.W.3d 301, 306-07 (Tex. App.—Houston [1st Dist.] 2009, no pet.).

10

(2) Iron Oak's TUFTA claim alleged that the former receiver, not a debtor as required by the statute,[3] made the wrongful assignment;

(3) Iron Oak's conversion claim involved a cause of action, and only tangible property may be converted under Texas law;[4]

(4) Iron Oak's conspiracy claim was derived solely from the groundless conversion and TUFTA claims; and

(5) Iron Oak's claims against the attorneys fail based on attorney immunity.[5]

Here, Anunobi argues that he had a plausible argument to overcome attorney immunity, and Sydow and Iron Oak claim that attorney immunity, as an affirmative defense, does not establish that Iron Oak's claims are groundless. While an affirmative defense, standing alone, may not establish that a claim is groundless, the court may take it into account when appropriate to determine whether a party's claims have no good-faith basis in law or fact. *See Nath*, 446 S.W.3d at 367–71 (examining whether the claim was time-barred as a consideration to support the trial court's groundless and improper purpose finding). The evidence shows that the

---

[3]   *See* TEX. BUS. & COM. CODE § 24.005(a)(l)–(2). The trial court noted that Iron Oak did not bring suit against CET, the party to the STA that agreed to pay the promissory note.

[4]   *See Robin Singh Educ. Servs., Inc. v. Test Masters Educ. Servs., Inc.*, 401 S.W.3d 95, 97 (Tex. App.—Houston [14th Dist.] 2011, no pet.).

[5]   *See Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 481 (Tex. 2015).

attorney-parties' actions of representing their clients at mediation fall squarely within their duties to represent their clients.

Sydow argues that the appellees never offered evidence showing that to Sydow's best knowledge, information, and belief, formed after reasonable inquiry, CET's collateral attack defense would defeat Iron Oak's claims. Even so, there is at least some evidence in the record to support the trial court's conclusion that the appellants brought the underlying suit to try to avoid the effect of the receiver's assignment and the denial of Iron Oak's motion to void the settlement agreement in the prior action.

Sydow and Iron Oak concede that Iron Oak's claims were weak but urge that they were not groundless. They challenge the trial court's conclusions as to each claim in the original petition. We address them below.

In its TUFTA claim, Iron Oak sued Hannan, the receiver but not CET, the debtor. Anunobi argues that a receiver may be sued for breach of fiduciary duty. Sydow and Iron Oak argue that Hannan, as the receiver, was a "debtor" under TUFTA and that CET did not have to be a party to the case. Yet none of the appellants cite any authority holding that a receiver may be liable for a violation of TUFTA. Indeed, Hannan was entitled to absolute immunity. *See Davis*, 317 S.W.3d at 306–07.

Iron Oak's conversion claim was based on claims CET previously assigned to Iron Oak, but Texas law is well-settled that only tangible property may be converted. *See Robin Singh Educ. Servs. Inc.*, 401 S.W.3d at 97. The appellants argue they had a good-faith argument for the extension of conversion to intangible property. But the appellants did not make this argument below until sanctions were requested, and they even used their conversion claim to seek a temporary restraining order, which requires a likelihood of success on the merits. *See DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 686 (Tex. 1990).

As to the conspiracy claim, Sydow and Iron Oak argue that the legal merit of the conspiracy claim is itself no basis for sanctions because if *either* the TUFTA claim or the conversion claim was not groundless, then the same is true of the conspiracy claim. Nevertheless, because conspiracy is not an independent, actionable claim, Iron Oak's inability to bring one actionable tort claim is fatal. *See Bradt v. Sebek*, 14 S.W.3d 756, 767 (Tex. App.—Houston [1st Dist.] 2000, pet. denied).

Anunobi argues that even if the court denied the claims on their merits, his incorrect analysis should not be the basis for sanctions. But the trial court, as fact finder, weighs evidence and determines credibility. *McLaurin v. McLaurin*, No. 01-14-00710-CV, 2016 WL 3023020, at *13 (Tex. App.—Houston [1st Dist.] May 26, 2016, pet. denied).

13

Despite the lack of factual and legal basis for the claims, the appellants did not qualify their allegations to be "upon information and belief"; they even went so far in the TRO application to declare that they were "undisputed." Anunobi argues that he attempted to advocate in good faith that the results of the settlement agreement's terms were "undisputed" facts because it appeared that way from the redacted settlement agreement. But the statements that certain facts are "undisputed" when the unredacted portions of the settlement agreement plainly showed otherwise reveal the hollowness of this argument. *See* TEX. R. CIV. P. 13.

We conclude that there is at least some evidence to support the trial court's finding that the TRO application was groundless because the appellants could not show they had a probable right of recovery in a trial on the merits based on either the redacted or the unredacted settlement agreement. *See DeSantis*, 793 S.W.2d at 686.

Thus, we hold that the trial court did not err in concluding that the appellants' pleadings were groundless.

### 2. The appellants' bad faith and improper purpose under Rule 13 and section 10.001

Under both Civil Practice and Remedies Code section 10.001(1) and Rule 13, the movant must prove the offending party's state of mind. TEX. CIV. PRAC. & REM. CODE § 10.001(1); TEX. R. CIV. P. 13.

Bad faith "means the conscious doing of a wrong for dishonest, discriminatory, or malicious purposes" and does not exist when a party merely exercises "bad judgment or negligence." *Gomer v. Davis*, 419 S.W.3d 470, 478 (Tex. App.—Houston [1st Dist.] 2013, no pet.). We construe "improper purpose" under Chapter 10 as the equivalent of "bad faith" under Rule 13. *Dike v. Peltier Chevrolet, Inc.*, 343 S.W.3d 179, 184 (Tex. App.—Texarkana 2011, no pet.); *see Gomer*, 419 S.W.3d at 478 ("Improper motive is an essential element of bad faith"). A document is filed for the purpose of harassment if it is filed with the intent to "annoy, alarm, and abuse another person." *Akinwamide v. Transp. Ins. Co.*, 499 S.W.3d 511, 527 (Tex. App.—Houston [1st Dist.] 2016, pet. denied). The trial court must measure the party's conduct and examine the facts available to the party at the time the relevant document was signed. *Gomer*, 419 S.W.3d at 478.

Additionally, a party acts in bad faith if he has been put on notice that his understanding of the facts may be incorrect, and he does not make reasonable inquiry before pursuing a claim further. *Robson v. Gilbreath,* 267 S.W.3d 401, 407 (Tex. App.—Austin 2008, pet. denied). A court may infer bad faith, improper motive, and intent to harass based on circumstantial evidence. *Ketterman v. Tex. Dep't of Fam. & Protective Services,* No. 01-12-00883-CV, 2014 WL 7473881, at *10 (Tex. App.—Houston [1st Dist.] Dec. 30, 2014, no pet.); *Scheel v. Alfaro*, 406 S.W.3d 216, 227 (Tex. App.—San Antonio 2013, pet. denied). While a court is generally

15

required to hold an evidentiary hearing to make a determination about the motives and credibility of the parties, the trial court may, in some circumstances, be able to make such a determination by taking judicial notice of items in the case file. *Gomer*, 419 S.W.3d at 478.

Here, the trial court concluded that appellants filed this suit and TRO application in bad faith and for improper purpose. The evidence in the record supports the trial court's conclusion.

In their briefing, the parties discuss numerous allegations of the appellants' wrongdoing. We need not address each of these allegations, so long as we determine that the trial court did not abuse its discretion by finding one or more of these allegations violates Chapter 10 and Rule 13.

The appellees introduced ample evidence from which the trial court may have inferred bad faith and improper purpose. Such evidence includes: (1) the unredacted portion of the redacted settlement agreement's direct contradiction with the appellants' allegations; (2) the appellants' representation that facts were "undisputed" when they were demonstrably false; (3) the appellants' filing of a TRO application explicitly seeking to restrain the appellees from proceeding in the Massachusetts lawsuit just before a summary judgment hearing in that suit; (4) the appellants' failure to notify the parties of their TRO application in contravention of the Texas Rules of Civil Procedure and their email discussion regarding whether to

give notice; (5) the appellants' filing of a TRO application based on an extensively redacted agreement; and (6) the appellants' constructive possession of the unredacted settlement agreement when they filed their original petition and TRO application. These facts support a reasonable inference that the appellants filed their original petition and TRO application in bad faith and for improper purpose.

Iron Oak contends that he should not be held responsible for his attorneys' conduct. Although a party should not be punished for its counsel's conduct "unless the party is implicated apart from having entrusted its legal representation to counsel," the court can impose sanctions when a party gives false testimony. *Metzger*, 892 S.W.2d at 52; *see In re Reece*, 341 S.W.3d 360, 368 (Tex. 2011).

Iron Oak, through Gosain's declaration attached to the TRO application, represented to the court under oath that multiple factual allegations were "undisputed" when the evidence established the contrary and could not have been represented as such in good faith. The appellees contend that Iron Oak's acts are sufficient to uphold the sanctions against it. We agree. Misrepresenting facts in a declaration to the court disserves justice and sanctions are appropriate under both Rule 13 and Chapter 10. *See Metzger*, 892 S.W.2d at 52–53 (holding sanctions under Rule 13 was appropriate when the represented party lied through an affidavit attached to the pleading).

Anunobi argues that his failure to give notification to the other parties is not a ground for sanctions under Rule 13 or Chapter 10. Nonetheless, the trial court may consider the case's entire history. *Greene v. Young,* 174 S.W.3d 291, 301 (Tex. App.—Houston [1st Dist.] 2005, pet. denied). To the extent Sydow and Anunobi claim that they submitted evidence of their good faith, the trial court, as the fact finder, was entitled to disbelieve all or any portion of Anunobi's and Sydow's testimony. *See Powell*, 2025 WL 626428, at *9. The trial court resolves any inconsistencies or conflicts in the evidence, and we may not substitute our judgment for that of the trial court. *Marshall v. MarOpCo, Inc.*, 714 S.W.3d 724, 770 (Tex. App.—Houston [1st Dist.] 2025, pet. filed). Likewise, the trial court had the discretion to disbelieve the appellants' argument regarding their knowledge and intention. *See Powell*, 2025 WL 626428, at *9.

The appellants urge that the appellees failed to meet their burden of showing improper motive because the lack of witness testimony to admit their exhibits was fatal to their motion for sanctions. At the hearing, counsel for Porter stated, "[Anunobi] wants us to take up all of the exhibits one at a time . . . ." Anunobi later questioned, "I'm just confused as to, when he says that's how he's going to be offering them, is he testifying? Is he going to be arguing trying to get this in?" He explained,

> Because we intend to call them to testify and cross-examine them because they've been filed for sanctions, as well; and I want to be able

18

to have an opportunity to do that within the time we have. I'm just concerned about equity with respect to time.

Anunobi's objection to the trial court appears to be based on his own motion for sanctions and his perceived lack of time to present his own evidence. In any event, although he asked how the exhibits would be offered, he did not object on this basis and did not state the grounds for his objection with sufficient specificity to make the trial court aware of the complaint. *See* TEX. R. EVID. 103(a); TEX. R. APP. 33.1. Other than Anunobi's vague objection, the appellants did not timely object to the exhibits being admitted into evidence. *See* TEX. R. EVID. 103(a); TEX. R. APP. 33.1. Thus, any argument on how the exhibits were entered into the record is waived.

Sydow and Iron Oak contend that the trial court erred by considering their misconduct in other cases. But a trial court may properly consider evidence of misconduct in other litigation, especially regarding a party's state of mind. *See, e.g.*, *Falk & Mayfield L.L.P.*, 974 S.W.2d at 824-25 (considering evidence of the party's conduct in other lawsuits to establish element of "bad faith"); *Bradt*, 14 S.W.3d at 767–68 (finding that a pattern of misconduct—including in other related litigation—demonstrated the party's bad faith in filing pleadings). Even if the evidence of Sydow's and Iron Oak's misconduct in other cases is irrelevant, the appellants waived their objection. *See Low*, 221 S.W.3d at 619.

In his fourth issue, Sydow contends that the trial court could not sanction Sydow for any misrepresentation about his status as counsel and that the trial court

19

could not consider Anunobi's affidavit filed after the hearing. At the same time, Sydow's signature on both the petition and TRO application, his name as one of the case contacts in the automated system, his attendance at the hearings, and his request for the unredacted settlement agreement all demonstrate that he represented Iron Oak in this case, despite his declaration otherwise. We defer to the trial court's determination of the witnesses' credibility on this issue. *See Powell*, 2025 WL 626428, at \*9. Regardless of Anunobi's affidavit, the evidence supports that Sydow was Iron Oak's counsel in this case, and Sydow's representation otherwise is patently false. Any error the trial court made by admitting Anunobi's affidavit into evidence was harmless. *See* TEX. R. APP. P. 44.1.

Based on the record before us, we hold that the trial court did not abuse its discretion in concluding that the pleadings were filed in bad faith or with the intent to harass and for improper purpose. Because there is at least some evidence to support the trial court's sanctions under both Civil Practice and Remedies Code section 10.001(1) and Rule 13, we need not consider whether the trial court's sanctions were proper under section 10.001's other provisions.

We overrule Iron Oak's first issue, Anunobi's first and second issue, and Sydow's first, second, and fourth issues.

*Attorney's fees and expenses under Rule 13*

Iron Oak complains that the evidence of attorney's fees and expenses supporting the $44,720 sanction under Rule 13 included unrecoverable items, such as expenses for computer-assisted legal research, billing for the attorneys' effort in pursuing sanctions, and charges accounted for under block billing. But Iron Oak did not include any citations to the clerk's record and only makes a global assertion of block billing. This does not properly present this issue for appeal, and thus his complaint is waived due to inadequate briefing. TEX. R. APP. P. 38.1; *See Adell v. State*, No. 01-21-00439-CR, 2023 WL 4938111, at *44 (Tex. App.—Houston [1st Dist.] Aug. 3, 2023, pet. ref'd).

*Amount of monetary sanctions under Chapter 10*

In Iron Oak's second issue, Sydow's third issue, and Anunobi's third issue, the appellants contend that the $250,000 sanction against Sydow, the $250,000 sanction against Iron Oak, and the $25,000 sanction against Anunobi, respectively, were excessive. Chapter 10 authorizes imposition of a monetary penalty, payable to the court, against parties and lawyers who file groundless pleadings in bad faith. TEX. CIV. PRAC. & REM. CODE §§ 10.001, 10.004(a).

"The amount of the sanction is limited by the trial court's duty to exercise sound discretion." *Low*, 221 S.W.3d at 619. "A trial court abuses its discretion when it acts without reference to any guiding rules or principles, not when it simply

exercises that discretion in a different manner than reviewing appellate courts might." *Id.* at 620.

To comply with constitutional due process, a sanction must be neither unjust nor excessive. *Nath*, 446 S.W.3d at 363. The first prong of the due process analysis requires a direct nexus between the offensive conduct, the offender, and the sanction award. *Id.* A just sanction is "directed against the abusive conduct with an eye toward remedying the prejudice caused to the innocent party." *Id.* at 363. "A court must attempt to determine whether the offensive conduct is attributable to counsel only, to the party only, or to both." *Id.*

The second prong of the due process analysis requires the punishment to be proportional to the offensive conduct. *Id.* "[T]he sanction imposed should be no more severe than necessary to satisfy its legitimate purposes." *Id.* "Legitimate purposes may include securing compliance with the relevant rules of civil procedure, punishing violators, and deterring other litigants from similar misconduct." *Id.*

Under Chapter 10, the only restriction on the amount of the penalty in the language of the statute is that "[t]he sanction must be limited to what is sufficient to deter repetition of the conduct or comparable conduct by others similarly situated." *Id.* § 10.004(b); *see, e.g.*, *Skepnek v. Mynatt,* 8 S.W.3d 377, 380-81 (Tex. App.—El Paso 1999, pet. denied) (upholding $25,000 sanction to be paid into registry of court under Chapter 10).

22

The Texas Supreme Court has recognized "a nonexclusive list of factors" for courts to consider in determining an appropriate award of sanctions. *See Low*, 221 S.W.3d at 620 n.5. The factors are:

> a. the good faith or bad faith of the offender;
>
> b. the degree of willfulness, vindictiveness, negligence, or frivolousness involved in the offense;
>
> c. the knowledge, experience, and expertise of the offender;
>
> d. any prior history of sanctionable conduct on the part of the offender;
>
> e. the reasonableness and necessity of the out-of-pocket expenses incurred by the offended person as a result of the misconduct;
>
> f. the nature and extent of prejudice, apart from out-of-pocket expenses, suffered by the offended person as a result of the misconduct;
>
> g. the relative culpability of client and counsel, and the impact on their privileged relationship of an inquiry into that area;
>
> h. the risk of chilling the specific type of litigation involved;
>
> i. the impact of the sanction on the offender, including the offender's ability to pay a monetary sanction;
>
> j. the impact of the sanction on the offended party, including the offended person's need for compensation;
>
> k. the relative magnitude of sanction necessary to achieve the goal or goals of the sanction;
>
> 1. burdens on the court system attributable to the misconduct, including consumption of judicial time and incurrence of juror fees and other court costs; [and]
>
> n. the degree to which the offended person's own behavior caused the expenses for which recovery is sought.

*Id.* Here, the trial court properly considered the factors applicable to the appellants' conduct when determining the monetary sanctions imposed on each appellant.

23

Sydow complains that the trial court failed to consider <u>all</u> of the *Low* factors, but the Texas Supreme Court only requires courts to consider <u>relevant</u> *Low* factors. *Low*, 221 S.W.3d at 621 (Tex. 2007). In any event, Sydow did not preserve this complaint because he raises it for the first time on appeal. TEX. R. APP. P. 33.1(a).

Much of the appellants' arguments discuss the prompt nonsuit after the appellees filed their Rule 91a motion and motion for sanctions. Nevertheless, baseless filing burdens both courts and individuals with needless expense and delay, and even if the litigant quickly nonsuits, the harm from the misconduct has already occurred. *Scott & White Mem'l Hosp. v. Schexnider*, 940 S.W.2d 594, 597 (Tex. 1996). Although Sydow's and Iron Oak's sanctions were severe, they were supported by the evidence of Sydow's and Iron Oak's flagrant bad faith conduct, abuse of the court system, and blatant disregard of their responsibilities. *See Brewer*, 601 S.W.3d at 720 (observing "the severity of sanction imposed turns on the *degree* of bad faith") (emphasis in original); *TransAm. Nat. Gas Corp. v. Powell*, 811 S.W.2d 913, 918 (Tex. 1991) (explaining that severe sanctions should be reserved for circumstances where offending party has flagrant bad faith or counsel callously disregarded their responsibilities under rules of procedure). The trial court explained that while the evidence showed Anunobi's misconduct did not arise to the level of Sydow's and Iron Oak's, Anunobi admitted that he would have done "the exact same thing."

Sydow contends that the trial court failed to consider lesser sanctions or explain why the $250,000 sanction was necessary. Yet the trial court explained that the large monetary sanction was justified under the *Low* factors and necessary to deter repetition of the sanctionable conduct. *See Powell*, 811 S.W.2d at 918 (holding punishment and deterrence are legitimate purposes for sanctions).

Accordingly, we cannot say the trial court abused its discretion by awarding $250,000 sanctions against Sydow, $250,000 sanctions against Iron Oak, and $25,000 sanctions against Anunobi.

Additionally, Sydow and Anunobi argue that Chapter 10 does not allow the trial court to impose continuing legal education requirements or notification requirements on an attorney. But neither Sydow nor Anunobi raised this objection in the trial court, and it is therefore not preserved for our review. TEX. R. APP. P. 33.1.

We overrule Iron Oak's second issue, Anunobi's third issue, and Sydow's third issue.

### *Evidentiary arguments by Anunobi*

In Anunobi's fifth issue, he contends that the trial court erred by admitting the appellees' exhibits into evidence despite his objection and for refusing to allow Anunobi to call Berg as a witness at the evidentiary hearing.

When the appellees asked the trial court to admit their documents into evidence, Anunobi objected, stating, "Because we intend to call them to testify and cross-examine them because they've been filed for sanctions, as well; and I want to be able to have an opportunity to do that within the time we have. I'm just concerned about equity with respect to time." The trial court overruled Anunobi's objection. Although Anunobi complains in his brief that his due process rights were violated, he did not object on that basis in the trial court. Accordingly, any error is waived. TEX. R. EVID. 103; TEX. R. APP. P. 33.1.

Anunobi also contends that the trial court erred by not requiring Berg to testify at the evidentiary hearing. At the hearing, Anunobi explained, "I filed a motion for sanctions against him. So, he's—actually, he's a party to the case. He may be a lawyer, but he's a party to the ultimate lawsuit." He further stated, "So, they filed sanctions against me. So, I filed sanctions against them." Thus, it appears from the record that Anunobi merely wanted Berg to testify based on Anunobi's own motion for sanctions.

We uphold the trial court's evidentiary ruling if there is any legitimate basis for the ruling. *Jones v. Mattress Firm Holding Corp.*, 558 S.W.3d 732, 737 (Tex. App.—Houston [14th Dist.] 2018, no pet.). "A reviewing court will not reverse a judgment because a trial court erroneously excluded evidence when the excluded

26

evidence is cumulative or not controlling on a material issue dispositive to the case."

*Id.* at 739; *see* TEX. R. APP. P. 44.1(a)(1).

Anunobi fails to show how Berg's testimony is material or relevant to the imposition of sanctions on Anunobi. *See, e.g.*, *Drew v. State*, 76 S.W.3d 436, 449–50 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd) (overruling issue regarding right to confront when appellant was not permitted to cross-examine). The record evidence of the appellants' misconduct is sufficient to support the sanctions imposed. Because the judgment does not involve Anunobi's own motion for sanctions, we hold any purported error in the admission or exclusion of Berg's testimony is harmless. *See U–Haul Int'l, Inc. v. Waldrip,* 380 S.W.3d 118, 132 (Tex. 2012); TEX. R. APP. P. 44.1.

We overrule Anunobi's fifth issue.

### *Appellate fees*

In Iron Oak's third issue, Sydow's fifth issue, and Anunobi's fifth issue, the appellants argue that the appellate attorney's fees awarded should have been explicitly contingent on the appellees' success on appeal.

The final judgment states that the appellate attorney's fees are contingent, but the trial court was not explicit regarding such contingency. The trial court must condition an award of appellate attorney's fees upon the appellant's unsuccessful appeal. *Keith v. Keith*, 221 S.W.3d 156, 171 (Tex. App.—Houston [1st Dist.] 2006,

27

no pet.). We may modify the judgment to make the award of appellate attorney's fees contingent upon the receiving party's success on appeal and do so here. *See id.*

**Suggestion of Bankruptcy**

After this case was set for submission, Iron Oak filed a suggestion of bankruptcy requesting this Court to stay all proceedings because Iron Oak filed for bankruptcy in France. Citing Texas Rule of Appellate Procedure 8.2, Iron Oak contends that this French bankruptcy suspends this appeal. But Iron Oak has not cited any authority to support such an application of Rule 8.2. Conversely, Anunobi and the appellees contend that Rule 8.2 applies only to domestic bankruptcy filings. We agree with Anunobi and the appellees.

"Congress has exercised its constitutional grant of authority over bankruptcy matters by vesting jurisdiction over them exclusively in the federal courts." *Kumkang Valve Mfg. Co. Ltd. v. Enter. Prods. Operating LLC*, 442 S.W.3d 602, 606 (Tex. App.—Houston [1st Dist.] 2014, no pet.); *see* 28 U.S.C. § 1334(a); U.S. CONST. art. I, § 8. The Texas Rules of Appellate Procedure recognize that a federal bankruptcy filing triggers a Texas appellate court's obligation to stay an appeal. *See* TEX. R. APP. P. 8.1(d) (referencing bankruptcy filings available through federal court online filing system); TEX. R. APP. P. 8.2 ("A bankruptcy suspends the appeal and all periods in these rules from the date when the bankruptcy petition is filed until the appellate court reinstates or severs the appeal *in accordance with federal law*."

28

(emphasis added)). As this Court explained in *Kumkang Valve*, a representative appointed in a foreign bankruptcy proceeding may petition for recognition of the foreign proceeding in United States bankruptcy court. 442 S.W.3d at 607; 11 U.S.C. §§ 1504, 1509(a), 1515. If the petition meets the statutory requirements, the bankruptcy court, after notice and a hearing, must enter an order granting recognition of the foreign proceeding. *See* 11 U.S.C. §§ 1515, 1517. Without such recognition, though, the entity seeking relief in the foreign bankruptcy proceeding is not entitled to a stay of proceedings within the United States. *See id.* §§ 1520, 1521.

Iron Oak has provided no evidence that a federal court has recognized the French bankruptcy. Accordingly, the suggestion of bankruptcy is deficient, and Iron Oak is not entitled to the benefit of a stay pursuant to the federal bankruptcy law and Texas Rule of Appellate Procedure 8.2.

## Conclusion

Based on the record before us, and all the reasons above, we affirm the trial court's imposition of sanctions under Chapter 10 and Rule 13. We modify the portion of the trial court's judgment ordering the appellants to pay the appellees' attorney's fees to be contingent on the appellees' success on appeal and affirm as modified.


Clint Morgan
Justice

Panel consists of Chief Justice Adams and Justices Morgan and Dokupil.